UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SUNDUS JABER,                                     File No. 1:24-CV-

     Plaintiff                                   Hon.

v.

35TH DISTRICT COURT,
REGIONAL MANAGED ASSIGNED
COUNSEL OFFICE (RMACO), and
CHIEF JUDGE RONALD LOWE,
SUPERVISING JUDGE JAMES PLAKAS, and
DIRECTOR OF RMACO
TERESA PATTON,
in their personal and official
capacities,

     Defendants.
_____

## COMPLAINT AND JURY DEMAND
_____

### Complaint

    Plaintiff Sundus Jaber, by and through her attorneys, Pinsky Smith, PC,

states as follows:

### Jurisdiction, Venue, and Parties

    1.    This is an action requesting that the Court remedy violations of the

First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; related

violations of Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws

§ 15.361 *et seq.*; related violations of Michigan's Elliott-Larsen Civil Rights Act

("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*; and related claims under Michigan common law, i.e., termination in violation of public policy and tortious interference with a business expectancy.

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.     Plaintiff, Sundus Jaber, is a resident of Wayne County, Michigan, and of the Eastern District of Michigan, Southern Division. Plaintiff is a young female attorney, licensed by the State Bar of Michigan in good standing since 2020. She is a Palestinian-American, practices the Islamic faith, and wears a religious head covering, known as a hijab, as part of her religious practice.

4.     Defendant 35th District Court ("35th District Court" or "the Court") is a district court in Plymouth, Michigan, organized pursuant to the laws of the state of Michigan; a state actor; and an "employer" of Plaintiff for purposes of federal and state law. The Court conducts its business in Wayne County, which is located in the Eastern District of Michigan, Southern Division.

5.     Defendant Regional Managed Assigned Counsel Office (RMACO) is a non-profit entity that assigns public defenders to district courts in Wayne County and implements the standards of the Michigan Indigent Defense Commission ("MIDC"). RMACO manages attorneys providing constitutionally mandated public criminal defense services in Wayne County's district courts, including the 35th District Court. RMACO contracts with the units of government responsible for providing public defenders to each of Wayne County's district courts and

administers the contracts and MIDC funds from the State of Michigan to support programs to provide public defense services to indigent criminal defendants.

6.      Defendant Judge Ronald Lowe has been the Chief Judge of the Court since January 1, 2024, and an "employer" of Plaintiff for purposes of federal and state law. He is an individual who, upon information and belief, lives within the Eastern District of Michigan, Southern Division.

7.      Defendant Judge James Plakas is a judge of the Court, and an "employer" of Plaintiff for purposes of federal and state law. Judge Plakas also supervises one of the Court's employed court reporters, Katrina (Kate) Wojotowicz, who has instituted a campaign of harassment against Plaintiff. Judge Plakas is an individual who, upon information and belief, lives within the Eastern District of Michigan, Southern Division.

8.      Defendant Teresa Patton is the director of the Regional Managed Assigned Counsel Office. She is the Court's agent, a licensed attorney, and an "employer" of Plaintiff for purposes of federal and state law. She works in Dearborn, within the Eastern District of Michigan, Southern Division.

9.      Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

<u>Factual Allegations</u>

*Plaintiff's Role as Public Defender*

10.      The Court funds its public defenders with MIDC grant money, and its grant is administered by RMACO.

11.     The MIDC grant provides funding from the State of Michigan. The MIDC requires strict compliance with its guidelines and reporting requirements for a public defender's office or entity providing contract attorneys to Courts to continue to receive funding. These guidelines include minimum standards for services that public defenders and the funding units for the Courts in which they practice must meet.

12.     MIDC's regional director for Wayne County is Kelly McDoniel.

13.     Upon information and belief, if the RMACO and/or a court violate MIDC's standards, MIDC, in Ms. McDoniel's judgment, can stop grant payments which are helping to pay for the obligation to provide legal services for indigent defense.

14.     The State Bar of Michigan is the governing body for lawyers in the State of Michigan. Membership is mandatory for attorneys who practice law in Michigan.

15.     The conduct of attorneys in Michigan are governed by, among other rules and statutes, the Michigan Rules of Professional Conduct ("the Ethics Rules"). The Ethics Rules also govern the ways in which attorneys are required to fulfill their professional duties to their clients. Attorneys are required to follow the Ethics Rules, and the State Bar can initiate disciplinary proceedings against attorneys who do not abide by the Ethics Rules.

16.     In addition, criminal defendants are entitled under the Sixth Amendment to the U.S. Constitution to "effective assistance of counsel," which

provides another guideline for the responsibilities of attorneys representing persons charged with crimes.

17.     Ms. Patton recruited Plaintiff to accept assignments as one of two lead public defenders at the 35th District Court, even though Plaintiff had not applied on her own for the position, due to Plaintiff's excellent performance in assignments in other courts. Plaintiff accepted and started in September 2023, for which she would be paid set rates for her legal services representing assigned clients who qualified for public defense.

18.     There are three Judges at the 35th District Court: Judge Lowe, who only has a civil case docket and no longer hears criminal cases except when he is filling in for one of the other judges; and Judge Michael Gerou and Judge Plakas, who are assigned all of the Court's criminal case docket.

19.     Upon information and belief, Wayne County has a difficult time recruiting a criminal defense attorney to accept appointments for indigent defendants at the 35th District Court because of the Court's reputation among the bar as being generally inhospitable to public defenders who vigorously defend cases and generally allowing its staff to be extremely and inappropriately hostile.

20.     Plaintiff is successful in her duties as a public defender and works diligently to provide her clients with a vigorous defense and the constitutionally required legal services that entails. Despite her early stage in her career, Plaintiff achieves excellent results for her clients and has a growing stable of private

criminal defense clients in her practice in addition to her Court-assigned files for clients as a public defender.

21.     Plaintiff endured nearly daily harassment for months from Judge Plakas' court reporter, Ms. Wojotowicz, and his criminal clerk, Alexis Fernimos, which included:

- Falsely accusing Plaintiff of allowing a client to tamper with a police report in a Court file. Upon investigation by the Court, it was determined that the police report was tampered with prior to Plaintiff's tenure at the Court.

- Saying disparaging things to clients about Plaintiff's professional abilities, which resulted in interference with and a breakdown in the attorney-client relationship, such that Plaintiff had to withdraw from representation from a case.

- Speaking in open court, on the record, in continual opposition to Plaintiff's arguments, and/or general statements directed to Judge Plakas without input requested from Judge Plakas.

- Repeatedly making complaints to Court administration and Judge Plakas blaming Plaintiff for problems not caused by Plaintiff.

- Repeatedly claiming to Court administration that Plaintiff violated alleged courtroom-specific policies that Plaintiff was never aware of, when these alleged policies are never followed by said staff members, nor are these policies required of Plaintiff's white male co-public defender.

22.     Since October 2023, Plaintiff pleaded with Defendant Teresa Patton on numerous occasions to inform MIDC's regional director Ms. McDoniel about the treatment of indigent defendants, and the treatment of her and other appointed counsel who protest violations of their client's constitutional rights. Upon information and belief, Ms. Patton never raised Plaintiff's concerns with MIDC representatives despite her acknowledged concerns with Judge Plakas' court

reporter and clerk's interference with the delivery of public defense services.

23.    On December 7, 2023, Plaintiff filed a request with the Court Administrator, then-Chief Judge Gerou, and Judge Plakas, asking for the behavior of Judge Plakas' staff to be investigated and simply asked that the harassment stop. (See Exhibit A, Plaintiff's Request for Investigation.)

24.    As soon as Judge Lowe became Chief Judge on January 1, 2024, not only did the harassment by court staff of Plaintiff not stop, but it significantly worsened. Further, Judge Plakas advised Ms. Patton that he felt that, as a result of Plaintiff's report and request for investigation, he could no longer hear Plaintiff's cases, but he also declined to recuse himself from her cases.

25.    On January 16, 2024, Judge Lowe met privately with Ms. Patton following a meeting between Ms. Patton, Judge Plakas, and Judge Plakas' court reporter, Ms. Wojotowicz. Ms. Patton advised Plaintiff that the Judges requested that she be removed from her public defender assignment at the Court because of her report and request for an investigation.

26.    Ms. Patton is running for judge at the neighboring 34th District Court. Ms. Patton filed her Statement of Organization to run for judge with the State of Michigan the day she met with Judge Lowe and Judge Plakas. Upon information and belief, support from sitting judges would bolster her ability to win the election.

27.    On February 13, 2024, the RMACO cut Plaintiff's hours in half effective March 11, 2024 without cause and while refusing to discuss solutions to

ameliorate the illegal working conditions at the Court, in retaliation for Plaintiff's request for an investigation of the harassment and violations of the law.

### The Court's history with Plaintiff, and later treatment of Plaintiff in her role as a public defender

28.     As a teenager, Plaintiff was wrongfully convicted of a misdemeanor criminal offense at a trial presided over by Judge Lowe. The conviction was reversed on appeal. The Circuit Court Judge reversed because Judge Lowe denied Plaintiff and the co-defendants their constitutional right to cross-examine the complaining witness on false testimony she provided one day before the trial in a multiple-hour bond-violation hearing. Unbeknownst to the complainant at the start of the bond-violation hearing, there was a video to prove her testimony was false, yet Judge Lowe did not allow that into evidence at Plaintiff's trial. Without the video proving the complainant was lying, at least one of the three defendants, all women with no criminal histories before and after this case in 2010, including a single mother, would likely have been jailed for a bond violation by Judge Lowe based on complainant's testimony.

29.     During her trial, Judge Lowe allowed the prosecutor, in the presence of the jury, to mock the Plaintiff's mother's English, as English is not her mother's first language.

30.     It is rare for a district court criminal conviction to be appealed, much less the verdict reversed in a successful appeal.

31.     This injustice motivated Plaintiff to become a criminal defense attorney.

32.     On Plaintiff's first day as a public defender assigned at the 35th

District Court, Plaintiff introduced herself to the Judges and asked for tips to

facilitate a successful transition from her predecessor. Judge Lowe stated in front of

several other court employees and two other judges that he heard Plaintiff was a

"true believer" and that Plaintiff "needs to understand that 95% of the people

[Plaintiff] will represent are guilty and if you contest more than 5% of cases, we will

boot you out of here."

33.     The 35th District Court has a bad reputation with attorneys

representing indigent defendants because of the attitude and behavior of Judge

Lowe, which has trickled down to many other court employees. Many attorneys

refuse to take indigent assignments at the 35th District Court.

*The Request for Investigation*

34.     The report and request for an investigation that Plaintiff filed

contained specific details to allow her concerns to be appropriately investigated.

(Exhibit A.)

35.     One of Plaintiff's specific complaints was the regular practice of Ms.

Wojotowicz and Ms. Fernimos to inappropriately speak on the record in opposition

to Plaintiff's legal arguments on behalf of her clients in many different respects and

on many occasions without being prompted or questioned by Judge Plakas. This is a

violation of the Manual for Court Reporters published by the State Court

Administrative Office. It also presents the appearance of impropriety for the entire

Court, since the public tends to view Court staff as part and parcel of the delivery of justice.

36.     In one instance, a Police Department recommended a cash bond for a non-assaultive crime for Plaintiff's criminal defendant client who had failed to appear in court in the past. Plaintiff advocated for her client to be released on a personal bond with a tether as the tether would provide sufficient security for that client's appearance in court. Without being prompted, Ms. Wojotowicz interjected on the record, "until he cuts it off."

37.     Staff speaking on the record in opposition to the appointed defense counsel's arguments has happened previously with other attorneys representing indigent defendants before Plaintiff's tenure with the 35th District Court.

38.     Upon information and belief, Court administration investigated the request set out in Exhibit A.

39.     On January 17, 2024, Plaintiff received a letter from Court Administrator Avdoulos stating that the Court had completed the internal investigation and would be "undertaking a review of its procedures and policies with staff to ensure improved future handling of similar situations." (See Exhibit B, Court Response to Plaintiff's Request for Investigation). However, the harassment only became worse as soon as Judge Lowe became chief judge. Further, Plaintiff was provided with some but not all transcripts of cases referenced in her request for investigation.

*Retaliation After Request for Investigation*

40.    After Plaintiff filed her request for investigation, select other Court staff who shared Ms. Wojotowicz's and Judge Lowe's attitudes about Plaintiff, criminal defendants, and what the appointed counsel role should be, also began to retaliate against Plaintiff. One business day after Plaintiff filed the request for investigation, when Plaintiff was next scheduled to work, court staff in another courtroom, with whom Plaintiff never had a prior issue, egregiously and vigorously opposed Plaintiff's bond arguments, made inappropriate comments about Plaintiff's clients, and interjected with requests made to the judge, without being prompted, two days in a row.

41.    In another example, a clerk's office cashier, who is not an attorney, stated to one of the Plaintiff's indigent criminal clients, "Your attorney does not know what she was talking about nor did she read the file…your license is reinstated" in a case where that client did not have a valid license up until the day he took a plea. Plaintiff had to withdraw from that case due to a breakdown in the attorney-client relationship as a result of the contradictory, inappropriate, and false legal advice given to Plaintiff's client. Further, upon information and belief, the head of security and another security guard posted at the front door of the Court have been disparaging her to other local attorneys.

*Defendants cut Plaintiff's caseload after meeting on January 16*

42.    On January 19, 2024, Ms. Patton requested an in-person meeting with Plaintiff after Ms. Patton met with Judge Lowe, Judge Plakas, and Judge Plakas'

court reporter, Ms. Wojotowicz, together, and after Ms. Patton had a private meeting with Judge Lowe on January 16, 2024. At this point, Plaintiff was aware that Ms. Patton was running for Judge in a neighboring court. Plaintiff was also aware that Ms. Patton and Judge Lowe had a private meeting that Judge Lowe requested, and that Ms. Patton never informed Ms. McDoniel of the issues at the Court after Plaintiff asked her to numerous times.  Accordingly, Plaintiff asked to be able to bring an attorney to represent her at the meeting with Ms. Patton. Even though Ms. Patton told Plaintiff the meeting needed "to be soon," Ms. Patton then refused to meet with Plaintiff and her attorney when she learned Plaintiff retained the undersigned counsel.

43.     Despite Ms. Patton's refusal to meet with Plaintiff's attorney, Ms. Patton came to court and spoke to Plaintiff on February 7, 2024. Ms. Patton started by advising Plaintiff that Judge Lowe called her the day before. Ms. Patton further advised that Judge Lowe and Judge Plakas requested that the Plaintiff be removed from Judge Plakas' courtroom.  During this conversation, Ms. Patton suggested that Plaintiff agree to assignment of case files going forward only in front of Judge Gerou, and not in front of Judge Plakas. Both Ms. Patton and Plaintiff's discussion assumed that Plaintiff would have the same number of workdays as before, just that she would handle all or virtually all of Judge Gerou's docket of indigent criminal defendants and none in Judge Plakas' court. Plaintiff expressed concern

that the other public defender would probably not like that because he would have to remain in Judge Plakas' courtroom full-time.

44.     On February 13, 2024, Ms. Patton, because of Judge Lowe and Judge Plakas' request to have RMACO remove Plaintiff, then determined that Plaintiff would be assigned only to her usual two-week rotation in front of Judge Gerou, and that she would not appear in Judge Plakas' court at all, cutting her workload and thus her income by half when the new schedule takes effect. The undersigned counsel protested the reassignment of Plaintiff to Ms. Patton, but Ms. Patton refused to discuss it or make any changes to the case assignments. Finally, Ms. Patton told Plaintiff that Defendants would terminate Plaintiff's employment as a public defender entirely if she files a lawsuit to challenge the legality of Defendants' actions.

45.     The Court's treatment of Plaintiff violates MIDC Standard 5, which provides that public defense attorneys are subject to judicial supervision only in the same manner and to the same extent as retained counsel or the prosecution; the ability of a person charged in the criminal legal system to pay for counsel should not dictate whether they receive constitutionally-sound representation that is free from interference by the judiciary.

46.     There is no ethical, legitimate, or lawful reason that Plaintiff cannot appear in front of Judge Plakas.

47.     Defendants are attempting to harass Plaintiff into leaving employment at the Court and/or make it financially impossible for her to continue there. Plaintiff

has fallen into disfavor with Defendants – and was opposed by Judge Lowe from the moment she started – for many illegitimate and unlawful reasons.

### Count I – Violation of Right to Protected Speech Under the First Amendment to the U.S. Constitution – 42 U.S.C. § 1983 as to all Defendants

48.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

49.    Plaintiff engaged in First Amendment protected speech when she first reported concerns to Ms. Patton and asked her to report the Court to MIDC for violation of multiple required standards necessary to meet MIDC grant requirements.

50.    Plaintiff engaged in First Amendment protected speech when she requested an investigation of inappropriate courtroom staff behavior and asked for the harassment to simply stop.

51.    Defendants reduced Plaintiff's contract as a means of retaliation for her protected speech.

52.    Defendants' decision to reduce Plaintiff's contract was a result of Plaintiff engaging in protected speech and violated the First Amendment.

53.    As a result of Defendants' violation of the First Amendment, Defendants are liable to Plaintiff for damages, including lost wages and benefits; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief deemed necessary and proper by the Court.

## Count II – Violation of WPA – as to all Defendants

54.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

55.     Plaintiff filed a request for investigation which included a report of violations or suspected violations of law to the Court Administrator, the Judges, and Ms. Patton. The request for investigation specifically alleges examples of where Judge Plakas permitted his court reporter and criminal clerk to violate the legal rights of criminal defendants by showing partiality and bias almost daily during court proceedings.

56.     Defendants violated the WPA when they cut Plaintiff's caseload, and therefore her income, in retaliation for her report of a violation of or suspected violation of law.

57.     As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress,

unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

## Count III – Violation of ELCRA – Discrimination – as to all Defendants

58.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

59.     Defendants have claimed that onerous, alleged courtroom policies apply to Plaintiff when those alleged policies have not been applied to Plaintiff's white male counterpart who has the same job position of lead public defender as Plaintiff.

60.     Defendants violated the ELCRA when they treated Plaintiff differently to her white male counterpart, on the basis of Plaintiff's sex, ethnicity, and/or religion.

61.     As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress,

unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

## Count IV – Reduction of Employment in Violation of Michigan's Public Policy – as to all Defendants

62.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

63.     Defendants reduced Plaintiff's caseload in retaliation for her report of a condition that was violating the rights of her clients.

64.     Providing criminal defendants with a vigorous and constitutionally adequate defense is part of the public policy of Michigan.

65.     Providing parties in a criminal case a courtroom reasonably free of bias and the appearance of impropriety is part of the public policy of Michigan.

66.     Defendants' reduction of Plaintiff's caseload violated Michigan public policy because Defendants did so in retaliation for Plaintiff's good faith report referenced in above paragraphs.

67.     Michigan's public policy requires that attorneys comply with the State

Bar's Ethics Rules for the good of the general public and for the enforcement of critical rights of defendants charged with crimes, as found in both the U.S. and Michigan Constitutions.  This is particularly true with respect to the duties of an attorney representing an individual charged with a crime, given that the individual is faced with potential loss of liberty.

68.    State law gives the State Bar and Attorney Grievance Commission the power to discipline an attorney who violates the Ethics Rules, up to and including loss of her license to practice law.

69.    An attorney who does not provide legal counsel that rises to the level of "effective assistance of counsel" pursuant to the Sixth Amendment to the U.S. Constitution, as that term has been defined by case law, may be subject to civil liability.

70.    By reducing the caseload of Plaintiff under the conditions as stated aforesaid, Defendants violated Michigan public policy, a common law tort under Michigan law.

71.    As a result of the foregoing, Plaintiff lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, legal costs, and undue damage to her career for which Defendants are liable.

WHEREFORE, Plaintiff Sundus Jaber demands judgment against Defendants for any and all economic and non-economic compensatory damages for whatever amount the jury finds necessary, a Court order for reinstatement to her job position, and judgment against Defendants for exemplary damages for whatever

amount the jury finds necessary, plus the costs of this action, attorneys' fees, interest and such other relief as this Court deems just, proper and equitable.

### Count V – Tortious Interference with Business Expectancy – as to Defendant 35th District Court

72.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

73.     Defendant 35th District Court has an obligation under the Michigan Constitution, the Michigan Court Rules, and Michigan public policy generally to provide an atmosphere where there is no appearance of impropriety, bias, partiality, or other injustice. As such, the Court has a duty and the power to implement and enforce appropriate rules with its staff and employees, including prohibiting communications with the public that would interfere with attorney-client relationships or which could constitute legal advice. Such rules are a standard part of employment with the vast majority of courts in Michigan.

74.     The employees of the 35th District Court act with the imprimatur of the Court and its Judges whenever they interact with the public and make statements to individuals who are parties in the Court. When those employees make statements opining about the quality of Plaintiff's legal advice and/or abilities, members of the public may tend to believe the employees, even if they are wrong, since members of the public may imply that Court staff are knowledgeable in these areas and have credibility because they are employed in an official capacity with the Court.

75.     Plaintiff had established attorney-client relationships with retained

clients who engaged Plaintiff's legal services and agreed to pay her an attorney fee in exchange for that service.

76.    The 35th District Court has condoned and permitted its employees to disparage Plaintiff's legal advice and abilities.

77.    The 35th District Court refuses to stop its employees from disparaging Plaintiff's legal advice and abilities, despite knowing that this interference has caused Plaintiff to lose a client who lost confidence in Plaintiff as a result of the employees' interference.

78.    The 35th District Court is responsible for the acts of its employees as agents of the Court, and for the Court's failure to have a policy on this subject which it takes measures to enforce.

79.    As a result of the foregoing, Plaintiff lost earnings and incurred mental anguish, emotional distress, unfair reputational damage, legal costs, and undue damage to her career for which Defendant is liable.

80.    As a result of the foregoing, Plaintiff has reasonable concerns that she will continue to lose clients and income as a result of the Court's and its agents' tortious acts.

WHEREFORE, Plaintiff Sundus Jaber demands judgment against Defendants for any and all economic and non-economic compensatory damages for whatever amount the jury finds necessary, injunctive relief as appropriate, and judgment against Defendant for exemplary damages for whatever amount the jury finds necessary, plus the costs of this action, attorneys' fees, interest and such other

relief as this Court deems just, proper and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff Sundus Jaber

Dated: March 28, 2024       By:/s/ *Sarah R. Howard*

Sarah Riley Howard
Elizabeth L. Geary
146 Monroe Center St NW, Suite 418
Grand Rapids, MI  49503
(616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: March 28, 2024       By:/s/ *Sarah R. Howard*

Sarah Riley Howard
Elizabeth L. Geary
146 Monroe Center St NW, Suite 418
Grand Rapids, MI  49503
(616) 451-8496