**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SUNDUS JABER,

     Plaintiff,

v.

35TH DISTRICT COURT, REGIONAL
MANAGED ASSIGNED COUNSEL
OFFICE (RMACO), and CHIEF JUDGE
RONALD LOWE, SUPERVISING
JUDGE JAMES PLAKAS, and
DIRECTOR OF RMACO
TERESA PATTON,
in their personal and official
capacities,

     Defendants.

Case No. 2:24-cv-10790-MAG-EAS

Hon. District Judge Mark A. Goldsmith

---

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT ON BEHALF OF DEFENDANTS 35TH DISTRICT COURT, JUDGE JAMES PLAKAS AND JUDGE RONALD LOWE**

Now come Defendants, 35th District Court, Judge James Plakas and Judge Ronald Lowe, by and through their attorneys, Kerr, Russell and Weber, PLC, and for their Motion for to Dismiss Plaintiffs' Complaint pursuant to FRCP 12 (b)(6), state as follows:

1.    Plaintiffs' Complaint alleges the following causes of action: (1) First Amendment retaliation; (2) retaliation in violation of the Whistleblower Protection

Act ("WPA"); (3) Discrimination in violation of the Elliott Larsen Civil Rights Act on the basis of gender, ethnicity, and/or religion; (4) Retaliation in violation of "public policy"; (5) Tortious Interference with a Business Relationship.

2.      For the reasons more fully set forth in the attached Brief in Support, Plaintiff has failed to state a claim as to each of these defendants given that her claims are barred by sovereign, absolute and/or qualified immunity, thus requiring dismissal.

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By:  */s/Lauri B. Stewart*
  Lauri B. Stewart (P55014)
Attorney for Defendants 35th District
Court, Plakas and Lowe
500 Woodward, Suite 2500
Detroit, MI 48226
(313) 961-0200

Dated: May 17, 2024   lstewart@kerr-russell.com

## CONCISE STATEMENT OF THE ISSUES

1. Should the court dismiss Plaintiff's First Amendment retaliation cause of action for failure to state a claim?

   *Defendant answers "yes"*

   *Plaintiff answers "no"*

   *The court should answer "yes"*

2. Should the court dismiss Plaintiff's Whistleblower Protection Act and violation of public policy  cause of action for failure to state a claim?

   *Defendant answers "yes"*

   *Plaintiff answers "no"*

   *The court should answer "yes"*

3. Should the court dismiss Plaintiff's ELCRA Discrimination cause of action for failure to state a claim?

   *Defendant answers "yes"*

   *Plaintiff answers "no"*

   *The court should answer "yes"*

4. Should the court dismiss Plaintiff's Tortious Interference cause of action for failure to state a claim?

   *Defendant answers "yes"*

   *Plaintiff answers "no"*

   *The court should answer "yes"*

# <u>MOST CONTROLLING AUTHORITIES</u>

**Cases**

Barrett v Harrington, 130 F. 3d. 246 (1997) …………………………...6, 7, 11, 20, 21

Bright v Gallia County, 753 F3d 639 (6th Cir 2014)…………………………..8, 20

Cameron v Seitz, 38 F.3d. 264 (6th Cir 1994)……………………. 9, 10, 11, 20, 21

Ernst v Rising, 427 F.3d. 351 (6th Cir 2005) ………………………………..14

Kurz v State of Michigan, 548 F.2d. 172 (6th Cir 1977)…………………………..9

Mirales v Waco, 502 US 9 (1991)…………………………………………………….6

Pucci v 19th District Court, 628 F.3d. 752 (6th Cir. 2010).13, 14, 15, 16, 17, 19, 22

**Statutes**

MCL 600.8222………………………………………………………………..19

MCL 691.1407(5)………………………………………………………………4

**Rules**

FRCP 12(b)(6)…………………………………………………………………23

# <u>TABLE OF CONTENTS</u>

**CONCISE STATEMENT OF THE ISSUES** ........................................................I

**MOST CONTROLLING AUTHORITIES** ......................................................II

**TABLE OF CONTENTS** ...............................................................................III

**TABLE OF AUTHORITIES** .........................................................................IV

   **I.**   **INTRODUCTION** ...................................................................................1

   **II.**   **STANDARD OF REVIEW** ....................................................................2

   **III.**   **LAW AND ANALYSIS** ..........................................................................3

      A.   Absolute Immunity ............................................................................3

      B.   Qualified Immunity ...........................................................................9

      C.   Sovereign Immunity .......................................................................11

      D.   Analysis ...........................................................................................16

   **IV.**   **CONCLUSION** ....................................................................................**19**

# TABLE OF AUTHORITIES

**Cases**

*Alkire v. Irving*, 330 F. 3d. 802 (2003) ........................................................13

*American Transmissions, Inc. v. Attorney General*,
    454 Mich. 135, 560 N.W.2d 50 (1997)..............................................................4

*Barrett v Harrington,* 130 F. 3d. 246 (1997) ...................................... 6, 7, 11, 20, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).............................................3

*Bright v Gallia County,* 753 F3d 639 (6th Cir 2014)...........................................8, 20

*Cameron v Seitz,* 38 F.3d. 264 (6th Cir 1994) .................................. 9, 10, 11, 20, 21

*Ernst v Rising,* 427 F.3d. 351 (6th Cir 2005)........................................................14

*Gray v Hakenjos,* 366 Mich 588 (1962) ...........................................................5, 19

*Joseph v. Patterson*, 795 F.2d 549 (6th Cir.1986).................................................2

*Kentucky v. Graham*, 473 US 159 (1985)............................................................13

*Kurz v State of Michigan,* 548 F.2d. 172 (6th Cir 1977) .........................................9

*Liteky v United States,* 510 US 540 (1994)..........................................................10

*Mayor of Detroit v. State,* 228 Mich App 386 (1988) ............................................5

*Merriweather v. City of Memphis*, 107 F.3d 396 (6th Cir.1997).............................2

*Mirales v Waco,* 502 US 9  (1991) .....................................................................6

*Odom v Wayne County*, 482 Mich 459 (2008) ....................................................12

*People v. Biddles,* 316 Mich App 148 (2016).........................................................5

*Petipren v Jaskowski,* 494 Mich 190 (2013)..........................................................3

*Pucci v 19th District Court*, 628 F.3d. 752 (6th Cir. 2010).........................................
    13, 14, 15, 16, 17, 19, 22

*Rodgers v 36th District Court,* 2011 WL 3714592 (ED Mich)..............................18

*Ross v Consumers Power*, 420 Mich 567 (1984)............................................ 13, 22

*Wood v 36th District Court,* 2023 WL 3559477....................................................18

**Statutes**

MCL 600.8222 ...............................................................................................19

*MCL 691.1407(5)* ...........................................................................................4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SUNDUS JABER,

     Plaintiff,                             Case No. 2:24-cv-10790-MAG-EAS

v.

                                      Hon. District Judge Mark A. Goldsmith

35TH DISTRICT COURT, REGIONAL
MANAGED ASSIGNED COUNSEL
OFFICE (RMACO), and CHIEF JUDGE
RONALD LOWE, SUPERVISING
JUDGE JAMES PLAKAS, and
DIRECTOR OF RMACO
TERESA PATTON,
in their personal and official
capacities,

     Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT

## I.   <u>INTRODUCTION</u>

Plaintiff's Complaint alleges that she was began working as a public defender at the 35th District Court in September 2023 (See ECF No. 1, Page ID 5, ¶17). The Complaint asserts that Plaintiff accepted the assignment to the 35th District Court after being recruited by representatives of the Michigan Indigent Defense Commission ("MIDC") and/or Regional Managed Assigned Claims Office ("RMACO") *Id.,* ¶10-17. Plaintiff alleges that she has been "successful in her duties" and "achieves excellent results for her clients". *Id.,* ¶20.   The Complaint further asserts that while practicing at the 35th District Court, she was the subject of "nearly daily harassment" by staff in the courtroom of Judge James Plakas. *Id.,* ¶21. Five instances are described and include being falsely accusing of allowing a client to tamper with a police report in a Court file; having her professional abilities disparaged to a client leading to a breakdown of that relationship; making unsolicited remarks on the record in response to representations made by Plaintiff to the court; being the subject of unjustified complaints to administration; and being accused of violations of policies of which she was unaware. See ECF No. 1, Page ID 6, ¶21. The complaint further alleges that on 12/7/23, Plaintiff made a Request for Investigation ("RFI") to court administration regarding these allegations. *Id.,* Page ID 7, ¶23 (See also Exhibit A, Plaintiff's Complaint).   Further, it is alleged that, after the RFI, "the judges"

requested that the MIDC/RMACO alter Plaintiff's assignment such that she would no longer appear in front of Judge Plakas and would only be assigned to cases in front of Judge Michael Gerou (See ECF No. 1, Page ID 7,12, ¶25,43).[1] Finally, the Complaint asserts that the alteration in Plaintiff's assignment resulted in a reduction in her hours.[2] *Id.,* ¶44.

## II.   <u>STANDARD OF REVIEW</u>

In reviewing a Rule 12 Motion for failure to state a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff and accepting as true all well-pleaded factual allegations. *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir.1997). "The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Joseph v. Patterson*, 795 F.2d 549, 551 (6th Cir.1986), cert. denied, 481 U.S. 1023 (1987). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[1] There are three (3) judges in the 35th District Court – Judges Lowe, Gerou and Plakas.  During the relevant time, only Judges Gerou and Plakas handled criminal call.  The two public defenders, including Ms. Jaber, would previously rotate every two weeks representing indigent clients in front of each judge.
[2] It is noteworthy that Plaintiff omitted important information from her Complaint which is that, during this same time frame, she made the claim that Judge Plakas' court reporter could not be trusted to transcribe hearings accurately and refused to allow her to do so.

cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Michigan law, "[w]hen a claim is barred by governmental immunity, summary disposition is appropriate under MCR 2.116(C)(7). Under MCR 2.116(C)(7), the moving party has the option of supporting its motion with affidavits, depositions, admissions, or other documentary evidence provided that the "substance or content" of the supporting proofs is admissible as evidence. In reviewing a motion under MCR 2.116(C)(7), [the court should] accept the factual contents of the complaint as true unless contradicted by the movant's documentation. When the material facts are not in dispute, this Court may decide whether a plaintiff's claim is barred by immunity as a matter of law" *Petipren v Jaskowski*, 494 Mich 190, 201 (2013).

## III.  LAW AND ANALYSIS

### A. Absolute Immunity

*MCL 691.1407(5)* extends absolute immunity from tort liability to a "judge, a legislator, and the elective or highest appointive executive official of all levels of government ... if he or she is acting within the scope of his or her judicial, legislative, or executive authority." The absolute immunity afforded to executive officials acting within their authority is not subject to any intent or "malevolent-heart exception." *American Transmissions, Inc. v. Attorney General*, 454 Mich.

135, 560 N.W.2d 50 (1997).  "The determination whether particular acts are within [one's] authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Id.,* 141.

"The rule is well settled that under our form of government the constitution confers on the judicial department all the authority necessary to exercise its powers as a co-ordinate branch of the government." *Gray v Hakenjos,* 366 Mich 588, 595 (1962).  Against this backdrop, the *Gray* court determined that "[t]o remove bailiffs and other court personnel for cause is an inherent power of the judiciary." *Id.*  In *Mayor of Detroit v. State,* 228 Mich App 386 (1988) (vacated in part on other grounds), the court held that "the court's inherent administrative powers include the authority to manage all personnel matters affecting employees[3] working within its branch." *Id.,* 417-418.  As it relates to the district courts, MCL 600.8222 recognizes that power and responsibility by requiring meetings among district judges "to discuss problems pertinent to the operations of the court".  In other words, district court judges are not only permitted, within the scope of their

---

[3] For the purposes of this motion ONLY, Defendants accept, as true, Plaintiff's assertion that Defendants are her "employers".  This will be disputed should this matter be further litigated.

duties, to address issues within the court that may have an impact in its operations, but are statutorily required to do so.  Finally, it is well-settled that a judge has the duty to control proceedings within his or her courtroom and has "wide discretion and power in fulfilling that duty." *People v. Biddles,* 316 Mich App 148, 153(2016).

In the federal arena, it is well-settled that judicial acts are entitled to absolute immunity. *Barrett v Harrington,* 130 F. 3d. 246 (1997).  In *Barrett,* the court held that "[e]xamples of [judicial] acts include…controlling the courtroom" *Id.,* 257. Moreover, "recusal is undoubtedly an act that concerns judicial decision-making", as is "protect[ing] the integrity of the judicial decision-making process". *Id. "*Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mirales v Waco,* 502 US 9, 11 (1991). As with state-based immunity, the immunity granted by federal law cannot be overcome with allegations of malice. *Id.* "[I]mmunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* In *Barrett,* the court determined that the judge was absolutely immune from liability for sending a letter to the attorney general's office to request an investigation into Plaintiff for harassing her and expressing "her fear that the

harassment would cause her to have to recuse herself from future cases involving him". *Id.,* 258. The court determined that the "general function" of the judge's act in writing the letter was "to protect the integrity of the judicial decision-making process". *Id.,* 259.  The court further held that the lower court erred in concluding that the act was "administrative because it did not involve courtroom proceedings or decisions concerning [Plaintiff's] case". The court recognized the opposite to be true: the "applicability of judicial immunity is not limited to acts which occur within the confines of the court room, and consequently, acts performed outside the courtroom are not, *ipso facto,* non-judicial acts" *Id.,*260.  Finally, the court concluded that "any result which did not extend immunity to judges acting to protect the integrity of the judicial decision-making process would seriously undermine judicial independence, a cornerstone of a judge's capacity to sit and decide cases". *Id.* In other words, according to *Barrett,* expressing concern about the actions of a person appearing before the court and the impact that such actions may have on judicial proceedings is, indeed, a judicial act.

In *Bright v Gallia County,* 753 F3d 639 (6th Cir 2014), a public defender sued, among others, Judge Evans for violation of constitutional rights, tortious interference, and breach of contract.  The allegations arose out of the judge's refusal to accept a plea resulting in the defense attorney making unsavory accusations against the judge.  The judge then filed a grievance against the attorney

and subsequently declared a conflict.  The judge thereafter removed himself from the multitude of cases that the attorney had pending before him, apparently to great hardship for the attorney.  The court determined that the suit against the judge was barred by absolute immunity.  In doing so, the court held that "Judge Evans actions fell short of expectations, but they were actions which were judicial in nature and taken in cases over which he had jurisdiction.  As a result, he is entitled to absolute judicial immunity". *Id.,* 648.  The court held that, by taking the action that he did, the judge was "arguably availing himself of his inherent powers to regulate his courtroom." *Id.,* 651.  Further, the court recognized that "even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive the judge of judicial immunity". *Id.,* 649. In other words, according to *Bright*, refusing to hear cases assigned to a particular attorney falls under the guise of regulating one's courtroom, which is a judicial act.

In *Kurz v State of Michigan,* 548 F.2d. 172 (6th Cir 1977), the plaintiff was a lawyer who had conflict with the judge during a criminal trial resulting in contempt proceedings, which the lawyer claimed violated his federal civil rights.  The circuit court judge was the primary defendant.  The court held that he was absolutely immune from liability for his actions.  Specifically, the court held that "all actions which constitute the basis for the complaint in retaliation to the judge took place in the discharge of his official duties.  No immunity doctrine affecting persons is

more strongly established than that of judicial immunity.  Dismissal of the cause of action against [the judge] is affirmed on the grounds of immunity".   In other words, according to *Kurz*, acting to address attorney conflict in the courtroom is within the official duties of a judge and is entitled to immunity.

In *Cameron v Seitz,* 38 F.3d. 264 (6th Cir 1994), the plaintiffs were husband and wife, as well as probate court employees.  They sued Seitz, a probate court judge, for among other things, discrimination and tortious interference.   The husband, a youth counselor who often appeared before the judge, claimed to have been mistreated by the judge in retaliation for having complained that the judge's actions caused an "impairment of his ability to perform his professional duties".   Among the purported mistreatment was that the judge barred him from his courtroom and transferred Plaintiff's cases which were in front of him to another case worker.  The court determined the judge was absolutely immune for any claim arising out of such actions.  Specifically, the court held that "a judge acts in his judicial capacity when he exercises control over his courtroom" and that "when [he] barred [Plaintiff] from his courtroom, he was acting in his judicial capacity". *Id.,* 271.  The court also held that "when [the judge] transferred [Plaintiff's] cases to another case worker, he was controlling the proceedings in his courtroom and, therefore, was entitled to immunity." *Id.,* 272.   In other words, according to *Cameron*, determinations by a judge regarding what cases they will hear and to

whom they are assigned is, indeed, an endeavor to control one's courtroom and are judicial acts entitled to immunity.

In *Liteky v United States,* 510 US 540, 555-556 (1994), the court recognized that judges are "imperfect" and that "expressions of impatience, dissatisfaction, annoyance, and even anger" are do not take render their actions extra-judicial. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."

### B. <u>Qualified Immunity</u>

It is well-recognized that if absolute immunity does not apply, the judge may still be entitled to qualified immunity, so long as their actions were "objectively reasonable". *Barrett,* 263; See also *Cameron,* 273. "In cases in which absolute immunity does not apply, qualified immunity may nonetheless shield a public official from civil liability under § 1983. Qualified immunity protects government employees from liability for the performance of their discretionary functions when they meet the objective legal reasonableness test." *Barrett,* 263. (internal citations and quotations omitted). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (relying on *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]o survive a claim of qualified immunity,

[a plaintiff] must show an alleged violation that implicates clearly established law. The relevant state of the law is that existing at the time of the alleged violation." *Cameron*, 272-273 (internal citations and quotations omitted). "The statutory or constitutional right is not 'clearly established' unless the law is clear in regard to the official's particular actions in the particular situation, such that any reasonable official would understand that his actions violate that right." *Id.* (internals omitted) Moreover, "[t]he unlawfulness of the official's actions must be apparent. If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Id.* (internals omitted). A "finding of a clearly established constitutional right must generally be supported by precedent from the Supreme Court or this circuit, or in the alternative, by decisions from other circuits". *Id.,*273. "[T]he issue of qualified immunity is a question of law and generally should be decided by the judge at the outset of the lawsuit". *Id,* fn 2.

*Odom v Wayne County*, 482 Mich 459, 473 (2008) provides additional guidance for determining qualified immunity regarding Plaintiff's intentional tort claims. In *Odom*, the court held that immunity from intentional torts requires that the person was acting within the scope of their employment, that the acts were undertaken in good faith, and that the acts were discretionary, as opposed to ministerial. Discretionary acts are defined as those which involve "significant decision-making". *Ross v Consumers Power*, 420 Mich 567 (1984). Immunity is

afforded so long as the defendant was acting within the scope of their authority performing a nonproprietary, governmental function. *Id.*

Qualified immunity is also a defense to any claim against the judges in their personal capacity. *Alkire v. Irving*, 330 F. 3d. 802, 811 (2003). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law". *Kentucky v. Graham*, 473 US 159, 165 (1985). "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* "When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law." *Id.*

## C. <u>Sovereign Immunity</u>

In *Pucci v 19th District Court*, 628 F.3d. 752 (6th Cir. 2010), Plaintiff, the deputy court administrator, claimed that she was terminated in retaliation for making complaints about the chief judge's use of religious language from the bench. She sued both the judge and the court claiming, among other things, 1st Amendment retaliation, violation of the WPA, and discrimination in violation of the ELCRA. The court held that "both defendants are entitled to immunity under the Eleventh Amendment". *Id., 755.* In reaching the conclusion that the district

court was an arm of the state entitled to sovereign immunity, the court examined

the factors set forth in *Ernst v Rising,* 427 F.3d. 351 (6th Cir 2005):

> In deciding whether an entity is an "arm of the State" on the
> one hand or a "political subdivision" on the other—the
> principal issue that occupies us today—the Supreme Court has
> considered several factors: (1) the State's potential liability for a
> judgment against the entity; (2) the language by which state
> statutes refer to the entity and the degree of state control and
> veto power over the entity's actions; (3) whether state or local
> officials appoint the board members of the entity; and (4)
> whether the entity's functions fall within the traditional purview
> of state or local government. *Id.,* 359. (internal citations
> omitted).

The *Pucci* court held that the lower court erred in denying sovereign

immunity on the grounds that the court's funding unit (the City of Dearborn),

rather than the state, would be liable in the event of a judgment.  By doing so, the

lower court "strayed from the appropriate analysis of taking the other factors into

account." *Id.,* 761.   Analysis of the other three factors, the court concluded,

weighed in favor of sovereign immunity.  The court held that resolution of the

second factor in favor of immunity was required because "[t]he Michigan

Constitution unquestionably establishes a unified state judicial system, of which

the Nineteenth District Court is a subdivision, under the control and administration

of the Michigan Supreme Court". *Id.,* 359.  More specifically:

> Michigan's Constitution vests the state's judicial power
> "exclusively in one court of justice which shall be divided into
> one supreme court, one court of appeals, one trial court of
> general jurisdiction known as the circuit court, one probate

court, and courts of limited jurisdiction that the legislature may establish (Mich. Const. art. VI, § 1), and vests in the Supreme Court general superintending control over all courts (Mich. Const. art. VI, § 4). Additionally, state statutes establish judicial districts of the district court each of which is an administrative unit subject to the superintending control of the supreme court. (relying on MCL § 600.8101(1); §600.8221) Thus it is the state legislature that establishes and defines the authority of the district courts, and it is the state supreme court that exercises supervisory and administrative control over those district courts. The local funding units have no such influence. *Id.* (internals omitted)

The *Pucci* court further held that application of the third *Ernst* factor "also urges granting sovereign immunity". *Id.,* 763.  In support of its conclusion, the court relied on the fact that "[t]he Michigan Supreme Court has repeatedly affirmed the unitary nature of the state's judicial power and the Michigan Supreme Court's exclusive role as supervisor and administrator of all of the subunits of that "one court" system." *Id.,* 763. "Despite the complications of the trial court environment, the case law, taken as a whole, has come to strongly affirm that the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch [of the State of Michigan]." *Id.,* 763-4 (quoting *Judicial Attorneys Ass'n v. State,* 459 Mich. 291(1998). Thus, "[t]he judicial branch is constitutionally accountable for the operation of the courts and for those who provide court services." *Id.* (emphasis added). The *Pucci* court concluded that "[g]iven these circumstances, there can be no doubt that all of

Michigan's courts, including those trial-level courts funded by local funding units, are part of one, unified judicial branch of the state. Consequently, just as the Michigan Supreme Court is an arm of the state, so is its Nineteenth District Court." *Id,* 764.

Finally, with regard to the fourth Ersnt factor, the *Pucci* court decided that this, too, should be resolved in favor of sovereign immunity. Specifically, the court held that:

> The State's authority to establish a single, unified judicial body has long been recognized in our federal system. The constitution of the United States ... recognizes and preserves the autonomy and independence of the [S]tates ... in their judicial departments. Consequently, the fourth Ernst factor—"whether the entity's functions fall within the traditional purview of state or local government"—also strongly suggests that sovereign immunity should attach to Michigan's district courts because their functions fall exclusively within the traditional purview of a State's judicial branch. The Nineteenth District Court was established pursuant to Michigan's constitutional provision vesting the "judicial power of the state ... in one court of justice." Mich. Const. art. VI, § 1. Such language could not make clearer that this entity operates as part of an authority historically reserved to the State. *Id.*

It was the ultimate conclusion of the *Pucci* court that "[l]ooking at these sovereign-immunity factors together, the importance of local funding units' potential liability is outweighed by the integrated role of Michigan's district courts within the state judiciary (as provided for by Michigan's Constitution and statutes), the degree of supervision and control that the Michigan Supreme Court and

legislature exercise over those courts, the role of state actors in appointing and removing district court judicial officers, and the traditional state function the Nineteenth District Court carries out. The Nineteenth District Court (as with Michigan trial-level district courts generally) is entitled to the immunity protections of the Eleventh Amendment, and all federal claims against it must be dismissed." *Id.*

Several decisions have subsequently held, similarly, that a district court is an arm of the state entitled to sovereign immunity. For example, in *Wood v 36th District Court,* 2023 WL 3559477, a magistrate was terminated allegedly in violation of the WPA, public policy and the First Amendment. The court held that the court was a political subdivision of the state entitled to immunity from such claims. In *Rodgers v 36th District Court,* 2011 WL 3714592 (ED Mich), the court held that "[b]ecause the 36th District Court is entitled to Eleventh Amendment sovereign immunity under the controlling precedent in *Pucci*, its request for the entry of a summary judgment must, therefore, be granted." *Id.* at 4. In *Rodgers,* the court recognized the number of cases reaching similar conclusions as follows:

> Other courts in this District and the Sixth Circuit have reached similar conclusions in the aftermath of *Pucci*. See e.g., *Dolan v. City of Ann Arbor,* 407 F. App'x. 45, *46 (6th Cir. Jan.12, 2011) (affirming district court's finding that, as an arm of the state, the district court in the City of Ann Arbor was protected by sovereign immunity from the plaintiff's lawsuit alleging violations of the Family Medical Leave Act); *Englar v. Davis*, No. 04–73977,04–73957, 2011 WL 1429202 (E.D.Mich. April

14, 2011) (accepting stipulation from parties, in light of *Pucci*, that the district court and its chief judge were entitled to immunity under the Eleventh Amendment based on the action brought against her in official capacity); *Peay v. Page*, No. 11–12234, 2011 WL 2518892 (E.D.Mich. June 23, 2011) (Michigan courts, operating as arms of the state, are entitled to sovereign immunity). *Id.*

In addition to determining that the district court was entitled to sovereign immunity, the *Pucci* court also held that **the judge was entitled to sovereign immunity** (emphasis added). Specifically, the court held that "[a]s an officer of the Nineteenth District Court, [the judge] also is entitled to sovereign immunity from all federal claims against him in his official capacity seeking damages and retrospective relief." *Id.* So, too, should be the result here.

### D. Analysis

The application of the above case law to the present matter requires the conclusion not only that the 35th District Court is entitled to sovereign immunity, but that the Defendant judges are as well. The court is an arm of the state, as set forth above. The judges are officers of that court, which entitles them to sovereign immunity as well. Dismissal is required on those grounds.

Further, the Defendant judges are entitled to absolute immunity. The gist of Plaintiff's claim, per her Complaint, is that, in response to her report of allegedly improper behavior by Judge Plakas' courtroom staff, purportedly impacting her client representation, "the judges" requested an alteration of her MIDC assignment

so that she would no longer take an assignment of cases in front of Judge Plakas. Absolute immunity under state law is extended to judges who are acting within the scope of their authority.  Case law (*Gray*) and state statute (MCL 600.8222) tell us that managing the what, who and when of the matters that come before the judge in his courtroom are within the "inherent powers of the judiciary".  They also tell us that managing the operations of the court and addressing problems that affect them are not only permitted as part of a judge's authority but required.  Ms. Jaber made an RFI claiming that the conduct of Judge Plakas' staff failed to conform to expected and/or accepted standards, thus calling into question the integrity of the operation of his courtroom. Per the applicable case law and statutory authority, making a request to limit Plaintiff's appearance in Judge Plakas' courtroom, if true, is undeniably within the judicial authority of the Defendants. Accordingly, the Defendant judges are entitled to absolute immunity from Plaintiff's state law claims.

Absolute immunity is also a bar to Plaintiff's federal claims.  The aforementioned precedent demonstrates that "judicial acts" are immune from liability.  It also demonstrates that acts do not have to take place in the courtroom to be considered judicial. *Barrett*, supra. Moreover, controlling one's courtroom and protecting the integrity of the courtroom are, indeed, judicial acts. *Id.;* See also *Cameron*, supra. The courts have held that refusing to hear cases to which a

particular attorney is assigned is a judicial act. *Bright,* supra.  The courts have also held that barring people from the courtroom and/or transferring cases from one worker to another are judicial acts entitled to immunity. *Cameron,* supra. It cannot be legitimately disputed, based on this law, that a request made to MIDC that Ms. Jaber no longer be assigned to cases in front of Judge Plakas, if true, is, indeed, a judicial act entitled to absolute immunity.  Accordingly, Plaintiff's federal claims must be dismissed as well.

If the court determines that neither sovereign nor absolute immunity bar Plaintiff's claims, dismissal is still warranted on the grounds of qualified immunity.  Qualified immunity exists where actions taken under color of state law were "objectively reasonable". *Barrett,* supra.; *Cameron,* supra. Actions are not objectively reasonable when they violate "clearly established" law. *Id.* To be clearly established, the unlawfulness of the conduct must be supported by enough legal precedent that the unlawfulness would be apparent to a reasonable person. *Id.* In order to overcome qualified immunity, Plaintiff would have to show that a reasonable person would know, based on established precedent, that requesting to limit the appearance of an attorney in a courtroom where she alleged conflict with, and questioned the integrity of, the staff is unlawful.  This is an insurmountable obstacle given that the above case law tells us otherwise.  It is axiomatic that a reasonable judge would not know that it is unlawful for him to make a request

aimed at controlling and/or managing what cases he will hear and to whom they are assigned when the aforementioned law *permits* that very thing. Qualified immunity, therefore, bars Plaintiff's federal claims, as well as the claims against the judges in their personal capacity.

Qualified immunity similarly bars Plaintiff's state law intentional tort claim. Qualified immunity for intentional torts exists when a discretionary governmental function is undertaken in good faith.  Given the holding in *Pucci*, it cannot be legitimately disputed that decisions regarding management of those practicing at the court and/or regarding court operations are discretionary governmental functions.  Certainly, determinations (or requests) impacting the operation of one's courtroom, including, if true, refusing to hear cases assigned to a certain public defender, involve "significant decision-making". *Ross,* supra. Moreover, there is no allegation in Plaintiff's Complaint that the purported action which would allow for any conclusion other than that it was taken for the good faith reason of managing courtroom operations and protecting the integrity of Judge Plakas' court. The actions alleged are, therefore, entitled to qualified immunity.

## IV.   <u>CONCLUSION</u>

Sovereign immunity bars all claims against the defendant judges and the court.  Absolute immunity bars Plaintiff's state law claims and federal official capacity claims.   Qualified immunity bars any remaining claims including

Plaintiff's federal personal capacity claims and state law intentional tort claims. Accordingly, dismissal pursuant to FRCP 12(b)(6) and MCR 2.116(C)(7) is required.

WHEREFORE, Defendants respectfully request that this honorable court dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(6), MCR 2.116(C)(7) and (C)(8).

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By:  _/s/Lauri B. Stewart_
    Lauri B. Stewart (P55014)
Attorneys for Defendants 35th District
Court, James Plakas and Ronald Lowe
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
lstewart@kerr-russell.com

Dated: May 17, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2024, I electronically filed the foregoing document and this Certificate of Service with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/Crystal R. Maynor*
Crystal R. Maynor, Legal Assistant
