# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

SUNDUS JABER,

      Plaintiff

v.

REGIONAL MANAGED ASSIGNED
COUNSEL OFFICE (RMACO), and
CHIEF JUDGE RONALD LOWE,
SUPERVISING JUDGE JAMES PLAKAS, and
DIRECTOR OF RMACO
TERESA PATTON,
in their personal and official
capacities,

      Defendants.

File No. 2:24-CV-10790

Hon. Mark A. Goldsmith

_____

## FIRST AMENDED COMPLAINT AND JURY DEMAND
_____

### Complaint

    For her First Amended Complaint filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Sundus Jaber, by and through her attorneys, Pinsky Smith, PC, states as follows:

### Jurisdiction, Venue, and Parties

    1.    This is an action requesting that the Court remedy violations of the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; related violations of Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws

§ 15.361 *et seq.*; related violations of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*; violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and violation of Michigan's eavesdropping statute, Mich. Comp. Laws § 750.539 *et seq.*

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.      Plaintiff, Sundus Jaber, is a resident of Wayne County, Michigan, and of the Eastern District of Michigan, Southern Division. Plaintiff is a young female attorney, licensed by the State Bar of Michigan in good standing since 2020. She is a Palestinian-American, practices the Islamic faith, and wears a religious head covering, known as a hijab, as part of her religious practice.

4.      The 35th District Court ("35th District Court" or "the Court") is a district court in Plymouth, Michigan, organized pursuant to the laws of the state of Michigan; a state actor; and an "employer" of Plaintiff for purposes of federal and state law. The Court conducts its business in Wayne County, which is located in the Eastern District of Michigan, Southern Division.

5.      Defendant Regional Managed Assigned Counsel Office (RMACO) is a non-profit entity that assigns public defenders to district courts in Wayne County and implements the standards of the Michigan Indigent Defense Commission ("MIDC"). RMACO manages attorneys providing constitutionally mandated public criminal defense services in Wayne County's district courts, including the 35th District Court. RMACO contracts with the units of government responsible for

providing public defenders to each of Wayne County's district courts. RMACO administers the contracts and Michigan Indigent Defense Counsel (MIDC) funds from the State of Michigan to support programs to provide public defense services to indigent criminal defendants.  RMACO serves a traditional public function and is a state actor.  RMACO is also one of Plaintiff's "employers" for purposes of federal and state law.

6.     Defendant Judge Ronald Lowe has been the Chief Judge of the Court since January 1, 2024, and an "employer" of Plaintiff for purposes of federal and state law. He is an individual who, upon information and belief, lives within the Eastern District of Michigan, Southern Division.

7.     Defendant Judge James Plakas is a judge of the Court, and an "employer" of Plaintiff for purposes of federal and state law. Judge Plakas also supervises one of the Court's employed court reporters, Katrina (Kate) Wojotowicz, who has instituted a campaign of harassment against Plaintiff. Judge Plakas is an individual who, upon information and belief, lives within the Eastern District of Michigan, Southern Division.

8.     Defendant Teresa Patton is the director of the Regional Managed Assigned Counsel Office, and is a final decisionmaker on issues of personnel and contracts with public defenders. She is the Court's agent, a licensed attorney, and an "employer" of Plaintiff for purposes of federal and state law. She works in Dearborn, within the Eastern District of Michigan, Southern Division.

9.     Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

<u>Factual Allegations</u>

*The Public Defender System in Michigan*

10.     Local governments in Michigan have historically been responsible for providing and overseeing indigent defense services.

11.     Following reports that highlighted concerns with Michigan's indigent defense system, the state passed legislation creating the MIDC in 2013.

12.     The MIDC oversees the implementation, enforcement, and modification of minimum standards, rules, and procedures to ensure that indigent criminal defendants are provided with effective assistance of counsel consistent with constitutional and statutory requirements.

13.     The MIDC sets forth written standards for indigent defense.  Standard 5 requires that the delivery of indigent criminal defense services "be independent of the judiciary."  This standard recognizes the "constitutional obligation of the State to respect the professional independence of the public defenders whom it engages."

14.     The MIDC also provides grants to local entities to fund indigent defense services.

15.     While some counties in Michigan directly employ public defenders, the majority of counties and other units of government instead use an assigned counsel or contract model to provide indigent defense services.

16.     The district courts in Wayne County and the units of government responsible for providing criminal defense for the indigent in those courts utilize a

model in which a local entity – RMACO – engages attorneys to provide indigent defense services at a fixed price.

17.     RMACO places and supervises public defenders in the district courts in Wayne County, including the 35th District Court.  RMACO performs a traditional public function in coordinating and supervising the provision of indigent defense services and acts jointly with government entities, including municipalities, the MIDC, and the district courts, in administering that function.

18.     The 35th District Court funds its public defenders with MIDC grant money administered by RMACO.

19.     The MIDC grant provides funding from the State of Michigan. The MIDC requires strict compliance with its guidelines and reporting requirements for a public defender's office or entity placing attorneys in courts to handle the indigent criminal defense appointments, in order to continue to receive funding. These guidelines include minimum standards for services that public defenders and the funding units for the Courts in which they practice must meet.

20.     MIDC's regional director for Wayne County is Kelly McDoniel.

21.     Upon information and belief, if RMACO and/or a court violate MIDC's standards, MIDC, in Ms. McDoniel's judgment, can stop grant payments which are helping to pay for the obligation to provide legal services for indigent defense.

22.     The State Bar of Michigan is the governing body for lawyers in the State of Michigan. Membership is mandatory for attorneys who practice law in Michigan.

23.     The conduct of attorneys in Michigan are governed by, among other rules and statutes, the Michigan Rules of Professional Conduct ("the Ethics Rules"). The Ethics Rules also govern the ways in which attorneys are required to fulfill their professional duties to their clients. Attorneys are required to follow the Ethics Rules, and the State Bar can initiate disciplinary proceedings against attorneys who do not abide by the Ethics Rules.

24.     In addition, criminal defendants are entitled under the Sixth Amendment to the U.S. Constitution to "effective assistance of counsel," which provides another guideline for the responsibilities of attorneys representing persons charged with crimes.

*Plaintiff's Role as Public Defender*

25.     Ms. Patton recruited Plaintiff to accept assignments as one of two lead public defenders at the 35th District Court, even though Plaintiff had not applied on her own for the position, due to Plaintiff's excellent performance in assignments in other courts. Plaintiff accepted and started in September 2023, for which she would be paid set rates for her legal services representing assigned clients who qualified for public defense. When Plaintiff accepted the position, Ms. Patton informed Plaintiff that she would not be able to take work elsewhere because the position was full-time. Plaintiff was expected to appear at the Court regularly for the criminal dockets and represent the clients that were on her assigned caseload.  Plaintiff did not choose which dockets to cover or which clients to represent.  In addition,

Plaintiff's working schedule, insofar as it involves in-court tasks, is dictated by RMACO and the Court.

26.     As a public defender in the 35th District Court, Plaintiff reported directly to Ms. Patton and RMACO.  Plaintiff's contract with RMACO required that she meet certain requirements in her representation of clients, including a time deadline within the date of her appointment for meeting with new clients.  The contract also required Plaintiff to submit to annual performance reviews from RMACO.

27.     There are three Judges at the 35th District Court: Judge Lowe, who only has a civil case docket and no longer hears criminal cases except when he is filling in for one of the other judges; and Judge Michael Gerou and Judge Plakas, who are assigned all of the Court's criminal case docket.

28.     Upon information and belief, RMACO has a difficult time recruiting a criminal defense attorney to accept appointments for indigent defendants at the 35th District Court because of the Court's reputation among the bar as being generally inhospitable to public defenders who vigorously defend cases and generally allowing its staff to be extremely and inappropriately hostile.

29.      Plaintiff is successful in her duties as a public defender and works diligently to provide her clients with a vigorous defense and the constitutionally required legal services that entails. Despite her early stage in her career, Plaintiff achieves excellent results for her clients. Plaintiff has a growing stable of private,

pro bono, and potential criminal defense clients who have sought legal services in addition to her Court-assigned files for clients as a public defender.

30.    Plaintiff endured nearly daily harassment for months from Judge Plakas' court reporter, Ms. Wojotowicz, and his criminal clerk, Alexis Fernimos, which included:

- Falsely accusing Plaintiff of allowing a client to tamper with a police report in a Court file. Upon investigation by the Court, it was determined that the police report was tampered with prior to Plaintiff's tenure at the Court.

- Saying disparaging things to clients about Plaintiff's professional abilities, which resulted in interference with and a breakdown in the attorney-client relationship, such that Plaintiff had to withdraw from representation from a case.

- Speaking in open court, on the record, in continual opposition to Plaintiff's arguments, and/or general statements directed to Judge Plakas without input requested from Judge Plakas.

- Repeatedly making complaints to Court administration and Judge Plakas blaming Plaintiff for problems not caused by Plaintiff.

- Repeatedly claiming to Court administration that Plaintiff violated alleged courtroom-specific policies that Plaintiff was never aware of, when these alleged policies are never followed by said staff members, nor are these policies required of Plaintiff's white male co-public defender.

31.    Since October 2023, Plaintiff pleaded with Defendant Teresa Patton on numerous occasions to inform MIDC's regional director Ms. McDoniel about the treatment of indigent defendants, and the treatment of her and other appointed counsel who protest violations of their client's constitutional rights. Upon information and belief, Ms. Patton never raised Plaintiff's concerns with MIDC representatives despite her acknowledged concerns with Judge Plakas' court

reporter and clerk's interference with the delivery of public defense services.

32. On December 7, 2023, Plaintiff filed a request with the Court Administrator, then-Chief Judge Gerou, and Judge Plakas, asking for the behavior of Judge Plakas' staff to be investigated and simply asked that the harassment stop. (See Exhibit A to Complaint, Plaintiff's Request for Investigation.)

33. As soon as Judge Lowe became Chief Judge on January 1, 2024, not only did the harassment by court staff of Plaintiff not stop, but it significantly worsened. Further, Judge Plakas advised Ms. Patton  as a result of Plaintiff's report and request for investigation, his court reporter was "offended," and he could no longer hear Plaintiff's cases, but he also declined to recuse himself from her cases.

34. In addition, Judges Lowe and Plakas pressured Judge Gerou to go along with a plan to ask Ms. Patton to remove Plaintiff from her position as one of two RMACO-assigned public defenders at the 35th District Court. Judge Gerou refused to do so.

35. On January 16, 2024, Judge Lowe met privately with Ms. Patton following a meeting between Ms. Patton, Judge Plakas, Judge Plakas' court reporter, Ms. Wojotowicz, and the court's labor attorney. Ms. Patton advised Plaintiff that the Judges requested that she be removed from her public defender assignment at the Court because her request for an investigation offended Judge Plakas' court reporter, Ms. Wojotowicz, among other reasons.

36. Ms. Patton is running for judge at the neighboring 34th District Court. Ms. Patton filed her Statement of Organization to run for judge with the State of

Michigan the day she met with Judge Lowe and Judge Plakas. Upon information and belief, support from sitting judges would bolster her ability to win the election.

37.     On February 13, 2024, RMACO cut Plaintiff's hours in half, effective March 11, 2024, without cause and while refusing to discuss solutions to ameliorate the illegal working conditions at the Court, in retaliation for Plaintiff's request for an investigation of the harassment and violations of the law.

### The Court's history with Plaintiff

38.     As a teenager, Plaintiff was wrongfully convicted of a misdemeanor criminal offense at a trial presided over by Judge Lowe. The conviction was reversed on appeal. The Circuit Court Judge reversed because Judge Lowe denied Plaintiff and the co-defendants their constitutional right to cross-examine the complaining witness on false testimony she provided one day before the trial in a multiple-hour bond-violation hearing. Unbeknownst to the complainant at the start of the bond-violation hearing, there was a video to prove her testimony was false yet Judge Lowe did not allow that into evidence at Plaintiff's trial. Without the video proving the complainant was lying, at least one of the three defendants, all women with no criminal histories before and after this case in 2010, including a single mother, would likely have been jailed for a bond violation by Judge Lowe based on complainant's testimony.

39.     During her trial, Judge Lowe allowed the prosecutor, in the presence of the jury, to mock the Plaintiff's mother's English, as English is not her mother's first language.

40. It is rare for a district court criminal conviction to be appealed, much less the verdict reversed in a successful appeal.

41. This injustice motivated Plaintiff to become a criminal defense attorney.

### *Plaintiff Becomes a Public Defender at 35th District Court*

42. RMACO hired Plaintiff for the open public defender position at the 35th District Court, which she started in September 2023. Once Judge Lowe became Chief Judge, he opposed her selection for the position and told others this, even though his lack of criminal docket meant that Plaintiff would not be practicing in his courtroom.

43. On Plaintiff's first day as a public defender assigned at the 35th District Court, Plaintiff introduced herself to the Judges and asked for tips to facilitate a successful transition from her predecessor. Although Judge Lowe was on a medical leave at the time and was scheduled to be out for another three weeks, Judge Lowe returned to work early unannounced on Plaintiff's first day. He stated in front of several other court employees and the two other judges that he heard Plaintiff was a "true believer" and that Plaintiff "needs to understand that 95% of the people [Plaintiff] will represent are guilty and if you contest more than 5% of cases, we will boot you out of here."

44. The 35th District Court has a bad reputation with attorneys representing indigent defendants because of the attitude and behavior of Judge

Lowe, which has trickled down to many other court employees. Many attorneys refuse to take indigent assignments at the 35th District Court.

*The Request for Investigation*

45.     The report and request for an investigation that Plaintiff filed contained specific details to allow her concerns to be appropriately investigated. (Exhibit A). However, for the sake of brevity, Plaintiff did not include every time she was harassed and/or every violation of the law she observed.

46.     One of Plaintiff's specific complaints was the regular practice of Ms. Wojotowicz and Ms. Fernimos to inappropriately speak on the record in opposition to Plaintiff's legal arguments on behalf of her clients in many different respects and on many occasions without being prompted or questioned by Judge Plakas. This is a violation of the Manual for Court Reporters published by the State Court Administrative Office. It also presents the appearance of impropriety for the entire Court, since the public tends to view Court staff as part and parcel of the delivery of justice.

47.     In one instance, a Police Department recommended a large cash bond for a non-assaultive crime for Plaintiff's criminal defendant client who had failed to appear in court in the past. Plaintiff advocated for her client to be released on a personal bond with a tether as the tether would provide sufficient security for that client's appearance in court. Without being prompted, Ms. Wojotowicz interjected on the record, "until he cuts it off."

48.     Staff speaking on the record in opposition to the appointed defense counsel's arguments has happened previously with other attorneys representing indigent defendants before Plaintiff's tenure with the 35th District Court.

49.     Upon information and belief, Court administration investigated the request set out in Exhibit A.

50.     Upon information and belief, before the investigation was complete, Defendant Judge Lowe instructed a court employee to run recording equipment intended to record official court proceedings after court was over, to allow him to surreptitiously eavesdrop on the conversations of Plaintiff and other court staff, including other judges.

51.     On January 17, 2024, Plaintiff received a letter from Court Administrator Avdoulos stating that the Court had completed the internal investigation and would be "undertaking a review of its procedures and policies with staff to ensure improved future handling of similar situations." (See Exhibit B, Court Response to Plaintiff's Request for Investigation). However, the harassment only became worse as soon as Judge Lowe became chief judge. Further, Plaintiff was provided with some but not all transcripts of cases referenced in her request for investigation.

52.     Ms. Patton asked the Court Administrator for a copy of the results of the investigation done on Plaintiff's request because, upon information and belief, Ms. Patton failed to investigate Plaintiff's concerns herself.

*Retaliation After Request for Investigation*

53.     After Plaintiff filed her request for investigation, select other Court staff who shared Ms. Wojotowicz's and Judge Lowe's attitudes about Plaintiff, criminal defendants, and what the appointed counsel role should be, also began to retaliate against Plaintiff. About one business day after Plaintiff filed the request for investigation, when Plaintiff was next scheduled to work, court staff in another courtroom, with whom Plaintiff never had a prior issue, egregiously and vigorously opposed Plaintiff's bond arguments, made inappropriate comments about Plaintiff's clients, and interjected with requests made to the judge, without being prompted, two days in a row.

54.     In another example, a clerk's office cashier, who is not an attorney, stated to one of the Plaintiff's indigent criminal clients, "Your attorney does not know what she was talking about nor did she read the file…your license is reinstated" in a case where that client did not have a valid license up until the day he took a plea. Plaintiff had to withdraw from that case due to a breakdown in the attorney-client relationship as a result of the contradictory, inappropriate, and false legal advice given to Plaintiff's client. Further, upon information and belief, the head of security and another security guard posted at the front door of the Court have been disparaging her to other local attorneys.

*Defendants cut Plaintiff's caseload after meeting on January 16*

55.     Upon information and belief, shortly after Judge Lowe became the chief judge in January 2024, Judges Lowe and Plakas began pressuring Judge

Gerou to go along with their plan to to remove Plaintiff from the entire 35th District Court because of her request for investigation.  Judge Gerou refused to do so, citing state law requiring that the provision of indigent defense services must be provided independent of the judiciary, and because he said he believed the Plaintiff did an excellent job representing indigent defendants.  Judge Gerou offered to try to resolve the situation by exploring solutions, like an attempt to rearrange Plaintiff's and the other public defender's dockets so that the Plaintiff would stay in Judge Gerou's courtroom full-time because he believed she was an excellent attorney and had no issues with her. This idea did not interest Judge Lowe or Judge Plakas.

56.     While this pressure campaign toward Judge Gerou was ongoing, Judge Lowe also directed certain court staff members to record Plaintiff without her knowledge when having discussions with her. He also requested a court staff member provide him with a recording that she made of an incident  she had with Plaintiff in Judge Gerou's courtroom, without Plaintiff's knowledge, after the conclusion of public court proceedings, off the record, and with no one else from the public in the courtroom.

57.     On January 16, 2024, Ms. Patton had a meeting with Judge Lowe upon his request.  Judge Lowe told Ms. Patton that he did not want Plaintiff to continue her duties as a public defender at the Court.

58.     That same day, Ms. Patton met with Judge Lowe, Judge Plakas, Judge Plakas' court reporter, Ms. Wojotowicz, and the court's labor attorney together.  Upon information and belief, Judge Plakas told Ms. Patton that he

"respected" Plaintiff as an attorney but she "had to go." Judge Plakas meant that he wanted Ms. Patton and RMACO to fire Plaintiff from her position as one of two public defenders at 35th District Court.

59.     On January 19, 2024, Ms. Patton office requested an in-person meeting with Plaintiff.  At this point, Plaintiff was aware that Ms. Patton had met privately with Judge Lowe, Ms. Patton would not answer Plaintiff numerous calls and texts a couple of days before and after the scheduled January 16th meeting, Plaintiff was also aware that Ms. Patton was running for Judge in a neighboring court and that Ms. Patton had never informed Ms. McDoniel of the issues at the Court after Plaintiff asked her to numerous times, Accordingly, Plaintiff asked to be able to bring an attorney to represent her at the meeting with Ms. Patton. Even though Ms. Patton told Plaintiff the meeting needed "to be soon," Ms. Patton then refused to meet with Plaintiff and her attorney when she learned Plaintiff retained the undersigned counsel.

60.     On February 7th, 2024, Ms. Patton came to court and spoke to Plaintiff, even though Ms. Patton had refused to meet with Plaintiff's attorney. The first thing Ms. Patton told Plaintiff was that Judge Lowe called her the day before and requested that Plaintiff be removed from Judge Plakas' courtroom before her next rotation with Judge Plakas.  During this conversation, Ms. Patton suggested that Plaintiff agree to the assignment of case files going forward only in front of Judge Gerou, and not in front of Judge Plakas. Both Ms. Patton and Plaintiff's discussion assumed that Plaintiff would have the same number of workdays as

before, just that she would handle all or virtually all of Judge Gerou's docket of indigent criminal defendants and none in Judge Plakas' court. Plaintiff expressed concern that the other public defender would probably not like that because he would have to remain in Judge Plakas' courtroom full-time.

61.    Upon information and belief, even though Ms. Patton purported to seek Plaintiff's agreement, Judge Lowe and Ms. Patton had already agreed that Plaintiff would appear only before Judge Gerou for the next several weeks and that they would work together toward a more permanent solution to limit Plaintiff's appearances at the Court if they were not successful at removing the Plaintiff entirely from the court.

62.    On February 13, 2024, Ms. Patton, because of Judge Lowe and Judge Plakas' request to have RMACO remove Plaintiff, then determined that Plaintiff would be assigned only to her usual two-week rotation in front of Judge Gerou, and that she would not appear in Judge Plakas' court at all, cutting her workload and thus her income by half when the new schedule was scheduled to take effect. Plaintiff's attorney protested the reassignment of Plaintiff to Ms. Patton, but Ms. Patton refused to discuss it or make any changes to the case assignments. Finally, Ms. Patton told Plaintiff that Defendants would terminate Plaintiff's employment as a public defender entirely if she filed a lawsuit to challenge the legality of Defendants' actions.

63.    The treatment of Plaintiff by Judges Plakas and Lowe violates MIDC Standard 5, which provides that public defense attorneys are subject to judicial

supervision only in the same manner and to the same extent as retained counsel or the prosecution; the ability of a person charged in the criminal legal system to pay for counsel should not dictate whether they receive constitutionally-sound representation that is free from interference by the judiciary.

64.    The actions of Judges Plakas and Lowe also violated state law, which requires that indigent criminal defense be independent of the judiciary.  Mich. Comp. Laws 780.991(1)(a).

65.    By allowing Judges Lowe and Plakas to dictate the terms of Plaintiff's appearances before the entire Court, rather than insisting on independence from the Court, Ms. Patton also violated Standard 5.

66.    Defendants are attempting to harass Plaintiff into leaving employment at the Court and/or make it financially impossible for her to continue there. Plaintiff has fallen into disfavor with Defendants – and was opposed by Judge Lowe from the moment she started – for many illegitimate and unlawful reasons.

## Count I – Violation of Right to Protected Speech Under the First Amendment to the U.S. Constitution – 42 U.S.C. § 1983 as to all Defendants

67.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

68.    Plaintiff engaged in First Amendment-protected speech when she first reported concerns to Ms. Patton and asked her to report the Court to MIDC for violation of multiple required standards necessary to meet MIDC grant requirements.

69. Plaintiff engaged in First Amendment-protected speech when she requested an investigation of inappropriate courtroom staff behavior and asked for the harassment to simply stop.

70. Defendants reduced Plaintiff's caseload as a means of retaliation for her protected speech.

71. Defendants' decision to reduce Plaintiff's workload was a result of Plaintiff engaging in protected speech and violated the First Amendment.

72. As a result of Defendants' violation of the First Amendment, Defendants are liable to Plaintiff for damages, including lost wages and benefits; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her full job position and full caseload; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief deemed necessary and proper by the Court.

### Count II – Violation of WPA – as to all Defendants

73. Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

74.    Plaintiff filed a request for investigation which included a report of violations or suspected violations of law to the Court Administrator, the Judges, and Ms. Patton. The request for investigation specifically alleges examples of where Judge Plakas permitted his court reporter and criminal clerk to violate the legal rights of criminal defendants by showing partiality and bias almost daily during court proceedings.

75.    Defendants violated the WPA when they cut Plaintiff's caseload, and therefore her income, in retaliation for her report of a violation of or suspected violation of law.

76.    The WPA applies to public employers, including the State and political subdivisions of the State.

77.    As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

<u>Count III – Violation of ELCRA – Discrimination – as to all Defendants</u>

78.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

79.     Defendants have claimed that onerous, alleged courtroom policies apply to Plaintiff when those alleged policies have not been applied to Plaintiff's white male counterpart who has the same job position of lead public defender as Plaintiff.

80.     Defendants violated the ELCRA when they treated Plaintiff differently to her white male counterpart, on the basis of Plaintiff's sex, ethnicity, and/or religion.

81.     Public employers are liable for violations of the ELCRA.

82.     As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

<u>Count IV –Violation of the Electronic Communications Privacy Act  – as to<br>Defendant Lowe in his individual capacity</u>

83.    The ECPA provides for civil liability against a person who "intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).

84.    Defendant Lowe directed specific court staff to continually record Plaintiff without her knowledge.

85.    Defendant Lowe intentionally intercepted oral communications between Plaintiff and others through an electronic recording device.

86.    Plaintiff enjoyed a reasonable expectation of privacy in the communications that were intercepted at Defendant Lowe's instruction.

87.    As a result of the foregoing, Plaintiff has suffered mental anguish, emotional distress, unfair reputational damage, legal costs, and undue damage to her career for which Defendant Lowe is liable.

WHEREFORE, Plaintiff Sundus Jaber demands judgment against Defendant Lowe for any and all economic and non-economic compensatory damages for whatever amount the jury finds necessary, injunctive relief as appropriate, and judgment against Defendant for exemplary damages for whatever amount the jury finds necessary, plus the costs of this action, attorneys' fees, interest and such other relief as this Court deems just, proper and equitable.

**<u>Count V – Violation of the Mich. Comp. Laws § 750.539 *et seq.* – as to Defendant Lowe</u>**

88.     Michigan law prohibits individuals from using an electronic device to eavesdrop upon private conversations.  Mich. Comp. Laws § 750.539c.

89.     By directing court staff to continually record Plaintiff without her knowledge Defendant Lowe willfully violated the statute in paragraph 88 to eavesdrop on Plaintiff.

90.     Plaintiff engaged in private conversations with other court staff while being recorded without her knowledge.

91.     Plaintiff did not provide consent to record her conversations.

92.     As a result of the foregoing, Plaintiff has suffered mental anguish, emotional distress, unfair reputational damage, legal costs, and undue damage to her career for which Defendant Lowe is liable.

WHEREFORE, Plaintiff Sundus Jaber demands judgment against Defendant Lowe for any and all economic and non-economic compensatory damages for whatever amount the jury finds necessary, injunctive relief as appropriate, and judgment against Defendant for exemplary damages for whatever amount the jury finds necessary, plus the costs of this action, attorneys' fees, interest and such other relief as this Court deems just, proper and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff Sundus Jaber

Dated: June 7, 2024             By:/s/ *Sarah R. Howard*
                                    Sarah Riley Howard

Elizabeth L. Geary
146 Monroe Center St NW, Suite 418
Grand Rapids, MI  49503
(616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth

above, Plaintiff hereby demands same.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: June 7, 2024          By: /s/ *Sarah R. Howard*

Sarah Riley Howard
Elizabeth L. Geary
146 Monroe Center St NW, Suite 418
Grand Rapids, MI  49503
(616) 451-8496