UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUNDUS JABER,

      Plaintiff,

v.

35TH DISTRICT COURT, et al.,

      Defendants.

Case No. 24-cv-10790

Honorable Robert J. White

---

**ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE
AND (2) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RESPECTIVE MOTIONS TO DISMISS**

---

This case arises from Plaintiff Sundus Jaber's time practicing as a public defender at Michigan's 35th District Court, and involves claims against Defendants the 35th District Court, Judge James Plakas, Chief Judge Ronald W. Lowe, the Regional Managed Assigned Counsel Office for Wayne County (RMACO), and Teresa Patton, RMACO's director.[1] (ECF No. 14, PageID.109-26).  Plaintiff asserts claims against all Defendants for (1) First Amendment retaliation under 42 U.S.C. § 1983; (2) violating Michigan's Whistleblowers' Protection Act (WPA); and (3) sex,

---

[1] The 35th District Court, Judge Plakas, and Chief Judge Lowe are collectively referred to as "Judicial Defendants."  RMACO and Patton are collectively referred to as "RMACO Defendants."

religious, and/or ethnic discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA).  She asserts additional claims against Chief Judge Lowe only under the Electronic Communications Privacy Act (ECPA) and Michigan's eavesdropping statute. (ECF No. 14, PageID.109-10, 126-31).   Before the Court are Judicial Defendants' and RMACO Defendants' respective motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF Nos. 18-19).  Plaintiff also moves to strike Judicial Defendants' reply. (ECF No. 27).  The Parties fully briefed the motions and the Court will decide them without oral argument pursuant to Local Rule 7.1(f)(2).

For the following reasons, the Court (1) denies Plaintiff's motion to strike and (2) grants in part and denies in part Defendants' respective motions to dismiss. Specifically, the Court denies Plaintiff's request to strike Judicial Defendants' reply; nevertheless, portions of the argument therein will not be considered.  Concerning the motions to dismiss, the Court dismisses with prejudice (1) all claims against the 35th District Court, (2) all official-capacity claims against Judge Plakas and Chief Judge Lowe seeking monetary damages and retrospective relief, (3) Plaintiff's WPA and First Amendment claims against Judge Plakas and Chief Judge Lowe, (4) Plaintiff's ECPA and eavesdropping claims against Chief Judge Lowe, and (5) Plaintiff's ELCRA claim against RMACO Defendants.   The Court declines to

dismiss the remaining claims—the ELCRA claim against the Judicial Defendants, and the WPA and First Amendment claims against the RMACO Defendants.

## I.    Background

RMACO is a nonprofit entity that manages the assignment, coordination, and supervision of public defenders in Wayne County, including at the 35th District Court. (ECF No. 14, PageID.110-13).  Plaintiff is female, practices the Islamic faith, and is a Palestinian-American attorney. (ECF No. 14, PageID.110).  According to Plaintiff, Patton, as RMACO's director, recruited her to work as one of two lead public defenders at the 35th District Court, and Plaintiff began this work in September 2023. (ECF No. 14, PageID.114).

Plaintiff alleges that the 35th District Court has a reputation of "being generally inhospitable to public defenders who vigorously defend cases and generally allowing its staff to be extremely and inappropriately hostile," and that Plaintiff endured near-daily harassment from Judge Plakas' staff while working cases there. (ECF No. 14, PageID.115-16).  One particularly relevant form of this harassment was the court staff "[r]epeatedly claiming . . . that Plaintiff violated alleged courtroom-specific policies that Plaintiff was never aware of, when these alleged policies are never followed by said staff members, nor are these policies required of Plaintiff's white male co-public defender." (ECF No. 14, PageID.116).

Plaintiff alleges further that she "pleaded" with Patton numerous times to elevate these concerns to Michigan's Indigent Defense Commission, but Patton never did so; Plaintiff also filed a complaint and request for investigation regarding the harassment with Judge Plakas and the court's prior chief judge, and she allegedly experienced resultant retaliation via similar harassment from other court staff. (ECF No. 14, PageID.116-17, 120-22). Plaintiff states that court administration investigated her complaint and responded that the court would review its policies and procedures "to ensure improved future handling of similar situations." (ECF No. 14, PageID.121).

According to Plaintiff, however, once Chief Judge Lowe assumed his position in January 2024, (1) the harassment against her by court staff increased significantly, (2) Judge Plakas and Chief Judge Lowe asked Patton to remove her as one of the court's public defenders in retaliation for seeking an investigation, and (3) RMACO ultimately cut her hours in half later that year, without cause, due to pressure from Chief Judge Lowe and Judge Plakas. (ECF No. 14, PageID.117-18, 122-26).

Plaintiff elaborates that Chief Judge Lowe was biased against her from the start of her appointment. (ECF No. 14, PageID.118-20). And Plaintiff alleges that Chief Judge Lowe and Judge Plakas, before speaking with Patton, unsuccessfully pressured another judge of the court to assist in removing Plaintiff from her assignment. (ECF No. 14, PageID.122-23). Plaintiff also alleges that Chief Judge

4

Lowe, during the court's investigation, "instructed a court employee to run recording equipment intended to record official court proceedings after court was over, to allow him to surreptitiously eavesdrop on the conversations of Plaintiff and other court staff, including other judges." (ECF No. 14, PageID.121). Plaintiff similarly alleges that Chief Judge Lowe, during his and Judge Plakas' pressure campaign to remove Plaintiff, "directed certain court staff members to record Plaintiff without her knowledge when having discussions with her . . . [and] requested a court staff member provide him with a recording that she made of an incident she had with Plaintiff in [another judge]'s courtroom, without Plaintiff's knowledge, after the conclusion of public court proceedings, off the record, and with no one else from the public in the courtroom." (ECF No. 14, PageID.123).

Plaintiff further specifies that Patton, under pressure from Chief Judge Lowe and Judge Plakas to "fire Plaintiff" as a public defender with the court, ultimately removed her from all Judge Plakas' cases, cutting her workload and income by half, all while refusing to speak with Plaintiff's attorney about the judges' efforts or this reassignment. (ECF No. 14, PageID.123-26). She alleges initially agreeing to Patton's suggestion that she stop appearing before Judge Plakas and be assigned only cases from another judge (Judge Gerou) going forward, but only with the understanding that her caseload would stay the same ("Both Ms. Patton and Plaintiff's discussion assumed that Plaintiff would have the same number of

workdays as before, just that she would handle all or virtually all of Judge Gerou's docket of indigent criminal defendants and none in Judge Plakas' court."). (ECF No. 14, PageID.124-25).

And according to Plaintiff, Patton threatened to terminate Plaintiff's employment outright if she filed any lawsuit against Defendants. (ECF No. 14, PageID.125). Plaintiff essentially accuses Defendants, because of their "disfavor" towards her, of collectively "attempting to harass Plaintiff into leaving employment at the Court and/or make it financially impossible for her to continue there." (ECF No. 14, PageID.126).

Concerning Plaintiff's First Amendment retaliation claim, she asserts that her requests for an investigation and for the harassment to stop were protected speech, and Defendants reduced her caseload in retaliation for this speech. (ECF No. 14, PageID.126-27). And Plaintiff asserts that this same retaliatory conduct violates Michigan's Whistleblowers' Protection Act where her request for investigation reported suspected violations of law. (ECF No. 14, PageID.127-28). Next, Plaintiff claims that Defendants committed discrimination in violation of the ELCRA on the basis of her "sex, ethnicity, and/or religion" by holding her to "onerous, alleged courtroom policies" not required of her white male counterparts. (ECF No. 14, PageID.129). And she claims Chief Judge Lowe violated the ECPA and Mich.

Comp. Laws § 750.539c by directing court staff to record Plaintiff without her knowledge. (ECF No. 14, PageID.1331).

Plaintiff alleges that the 35th District Court and RMACO are state actors, and that all Defendants are Plaintiff's employers under federal and state law. (ECF No. 14, PageID.110-11).  She also alleges that Patton "is a final decisionmaker on issues of personnel and contracts with public defenders" and "the Court's agent." (ECF No. 14, PageID.111).  Plaintiff seeks a judgment against Defendants, monetary damages, "reinstatement to her full job position and full caseload," and other injunctive relief "as appropriate." (ECF No. 14, PageID.127-31).

Judicial Defendants and RMACO Defendants each now move to dismiss. (ECF Nos. 18-19).  Plaintiff moves to strike Judicial Defendants' reply. (ECF No. 27).

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.") (cleaned up).

7

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.   "But a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).   Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

## III.    Analysis

### A.    Arguments for Dismissal

In their motion to dismiss, RMACO Defendants argue that Plaintiff's § 1983 First Amendment retaliation claim against them must be dismissed for several reasons. (ECF No. 18, PageID.188-92).  First, they argue that Plaintiff's allegations fail to establish that RMACO is a state actor. (ECF No. 18, PageID.189-90).  Even if RMACO is a state actor, RMACO Defendants argue that Plaintiff fails to plead a

§ 1983 claim because she does not allege that her reduction in work arose from any RMACO policy or custom. (ECF No. 18, PageID.190-91). And they argue that the First Amendment claim nevertheless fails as a matter of law because Plaintiff's allegations do not establish any adverse employment action against her. (ECF No. 18, PageID.191-92).

RMACO Defendants relatedly argue that Plaintiff insufficiently pled, "[b]eyond conclusory allegations," that she is the employee of any Defendant. They counter that—as alleged in the amended complaint—-she instead owns her own law practice, sets her own rates, and accepts appointments as a public defender, but is not hired as a court or RMACO employee. (ECF No. 18, PageID.185). Given these allegations, RMACO Defendants elaborate that Plaintiff fails to establish that either RMACO or Patton was her employer, specifically because she does not allege that these defendants had sufficient control of Plaintiff's work.[2] (ECF No. 18, PageID.193-96). "It is clear [from the complaint] that Plaintiff had, at most, an independent contractor relationship with RMACO." (ECF No. 18, PageID.194). RMACO Defendants argue that, given this pleading deficiency, Plaintiff's employment-based WPA and discrimination claims against them fail as a matter of

---

[2] To the extent RMACO Defendants fault Plaintiff for "not expressly identifying RMACO as her employer" (ECF No. 18, PageID.193), this is incorrect. Plaintiff's amended complaint specifically asserts that "RMACO is also one of Plaintiff's 'employers' for purposes of federal and state law." (ECF No. 14, PageID.111).

law. (ECF No. 18, PageID.192-93, 195-96).  RMACO Defendants also argue that Plaintiff insufficiently pled her discrimination claim against them because she fails to raise any specific allegations of RMACO's or Patton's involvement in the allegedly discriminatory courtroom policies underlying this claim. (ECF No. 18, PageID.196-98).

Plaintiff counters that her First amendment retaliation claim should advance because (1) RMACO is a state actor under the applicable standard; (2) Patton was RMACO's final decision maker concerning all personnel issues, including the size of public defenders' caseloads; and (3) Plaintiff's caseload being cut in half was an unconsented, adverse action that reduced her income by half and chilled her exercise of free speech. (ECF No. 24, PageID.292-97).

Next, Plaintiff maintains that she sufficiently pled her WPA and ELCRA claims. (ECF No. 24, PageID.297-301).  She argues that the Court at the pleading stage "should not engage in the 'fact-intensive inquiry' of Michigan's economic realities test but should instead defer until the parties have had the opportunity to develop the record through discovery." (ECF No. 24, PageID.298).  Plaintiff argues further that she nevertheless provides facts to establish that Patton and RMACO are her employers because (1) "Patton told Plaintiff she should expect to work solely for RMACO and not accept other work;" (2) "Plaintiff was [thus] economically dependent on RMACO and not in business for herself[;]" and (3) "RMACO and

Patton also controlled Plaintiff's dockets and caseload, as well her court schedule, and required her to submit to its performance reviews." (ECF No. 24, PageID.299). Plaintiff distinguishes RMACO Defendants' cited authority on the employment issue and likens the instant case to one where the Court determined that a prosecutor making a similar WPA claim as Plaintiff here was the defendant County's employee under Michigan's economic realities test. (ECF No. 24, PageID.299-300).

Plaintiff also argues that she sufficiently pled her discrimination claim, even if an employment relationship is lacking, given that Patton acknowledged the accuracy of Plaintiff's concerns about her treatment, "including being held responsible for complying with alleged Court rules and policies which were not applied to her white male co-public defender," but refused to report these concerns despite Plaintiff's multiple requests. (ECF No. 24, PageID.300-01).  And Plaintiff argues that Patton can be liable for discrimination under a "cat's paw" theory for agreeing to cut Plaintiff's caseload at the behest of judges motivated at least in part by sex, race, and/or religion. (ECF No. 24, PageID.301).

In reply, RMACO Defendants largely defer to their earlier arguments, reiterate the lack of any sufficiently alleged employment relationship or state action, and additionally fault Plaintiff for adding new allegations in her response to avoid dismissal. (ECF No. 26, PageID.323-25).  They also argue that required compliance with Michigan Indignant Defense Commission (MIDC) standards does not make

11

Plaintiff an employee (as implied by the amended complaint) because these apply to all public defenders, whether contracted or employed, and are not imposed by RMACO. (ECF No. 26, PageID.324).  According to RMACO Defendants, where Plaintiff's allegations affirmatively show she was at most an independent contractor, no amount of discovery would rectify the deficiencies in her claims. (ECF No. 26, PageID.325).

For their part, Judicial Defendants first argue that the claims against the 35th District Court, and all official-capacity claims against the judges, must be dismissed on the basis of sovereign immunity. (ECF No. 19, PageID.215-17, 225-26).  They also argue that the judges are entitled to absolute judicial immunity because their allegedly improper conduct was intended to control courtroom operations and thus judicial in nature.[3] (ECF No. 19, PageID.217-22, 226-28).  Lastly, they argue that Plaintiff's claims under the ECPA and Mich. Comp. Laws § 700.539 are insufficiently pled because her allegations establish neither a reasonable expectation of privacy nor that any communication was intercepted. (ECF No. 19, PageID.231-34).

---

[3] In a footnote to this argument, Judicial Defendants state, "For the purposes of this motion ONLY, Defendants accept, as true, Plaintiff's assertion that Defendants are her 'employers[.']  This will be disputed should the matter be further litigated." (ECF No. 19, PageID.218 n. 2).

Plaintiff first counters that her request for declaratory and injunctive relief—such relief that "would allow her to continue as a public defender at the [35th District] Court with her full caseload and adequate remedial measures to address continued retaliation and harassment there"—is not barred by sovereign immunity. (ECF No. 23, PageID.259-61, 260 n. 3). Plaintiff argues that her official-capacity claims against Judge Plakas and Chief Judge Lowe should therefore advance "insofar as they seek [prospective] relief." (ECF No. 23, PageID.261).

Plaintiff also argues that Judicial Defendants' "campaign to remove [her] from her role as a public defender" involved administrative actions not entitled to judicial immunity. (ECF No. 23, PageID.261-68). Plaintiff specifically asserts that the judges' efforts to remove her went well beyond managing the courtroom, such that they were acting as employers and not in a judicial capacity. She similarly argues that Chief Judge Lowe cannot claim judicial immunity for his recording of Plaintiff's conversations because even if he had the authority to do so, it was an administrative action involving matters outside his own courtroom. (ECF No. 23, PageID.268-69).

Next, Plaintiff argues that her WPA and discrimination claims should proceed because both Michigan statutes waive governmental immunity for state actors. (ECF No. 23, PageID.269-71). And Plaintiff argues that her facts sufficiently allege claims under the ECPA and Mich. Comp. Laws § 700.539c. (ECF No. 23, PageID.274-75).

In reply, Judicial Defendants argue for the first time that Plaintiff's discrimination claim must be dismissed because she regularly admits in her response that the alleged basis for her reduction in caseload was her criticism of the court and its staff, rather than her membership in any protected class. They similarly argue that despite their motion's initial acceptance (at this stage only) that they are Plaintiff's employers, "Plaintiff's Responses to all Defendants' Motions to Dismiss contain considerable admissions which fatally undermine any such claim." (ECF No. 25, PageID.307).

According to Judicial Defendants, Plaintiff's employment-based WPA and ELCRA claims must be dismissed because Plaintiff's claims and admissions "now make it impossible for Plaintiff to show that Judge Plakas and/or Judge Lowe had the right to fire, hire or discipline her, that they were responsible for her compensation, and or [sic] that they had any control over how she carried out her job duties." (ECF No. 25, PageID.308). And though not wholly clear, Judicial Defendants seemingly assert that this lack of an employment relationship is fatal to all Plaintiff's claims against them. (*See* ECF No. 25, PageID.308 ("For this . . . reason, [Plaintiff's] lawsuit against [the judges] cannot proceed.")).

Next, Judicial Defendants argue that Plaintiff's asserted request for injunctive relief to avoid sovereign immunity and dismissal is unavailing because (1) "Plaintiff's Response has failed to demonstrate that she has a viable cause of action

14

against Plakas or Lowe upon which equitable or injunctive relief could be based," and (2) her two cases cited in support are inapplicable here. (ECF No. 25, PageID.308-09).   Regarding judicial immunity, Judicial Defendants' distinguish Plaintiff's authority on this issue, reiterate that Plaintiff is not a court employee, and argue, therefore, that the judges' alleged act of "'pushing for Plaintiff's removal'" undeniably constitutes control of the courtroom and is entitled to immunity. (ECF No. 25, PageID.309-10).

Furthermore, all Defendants alternatively argue that dismissal is warranted on the basis of qualified immunity because they did not violate clearly established law. RMACO Defendants argues this point assuming *arguendo* that Patton is a public employee (*i.e.*, assuming RMACO is a state actor). (ECF No. 18, PageID.198-201). Judicial Defendants do so in the event absolute immunity does not apply. (ECF No. 19, PageID.222-25, 228-30).   In each case, Plaintiff argues that qualified immunity is more appropriately decided on a motion for summary judgment, and that the doctrine nevertheless does not apply here because her allegations, accepted as true, amount to violations of clearly established law. (ECF No. 23, PageID.271-74; ECF No. 24, PageID.301-05).   Defendants disagree. (ECF No. 25, PageID.310-13; ECF No. 25, PageID.326-27).

### B.    Plaintiff's Motion to Strike

Plaintiff moves to strike Judicial Defendants' reply brief, arguing that it improperly raises new arguments for the first time. (ECF No. 27, PageID.330-35). She specifically asserts that Judicial Defendants' new arguments involving the lack of an employment relationship or protected-status basis for the judges' actions cannot be pursued here because her "'admissions'" they relied on were already known from the amended complaint, Judicial Defendants thus had ample opportunity to raise the new issues, and they instead focused their motion to dismiss solely on issues of immunity. (ECF No. 27, PageID.330-34).  Plaintiff also argues that Judicial Defendants—to the extent their reply argument for judicial immunity relies on the lack of an employment relationship with Plaintiff—should not be allowed to revoke their motion's earlier admission to the contrary after Plaintiff's briefing was already complete. (ECF No. 27, PageID.334-35).  In response, Judicial Defendants counter that Plaintiff provides no authority to justify striking their reply, and that any additional arguments they raised were properly done so to address factual concessions from Plaintiff's response. (ECF No. 28, PageID.339-42).

Motions to strike are typically disfavored, and the decision of such motions is within the trial court's discretion. *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 697 (6th Cir. 2017).  Plaintiff is correct, however, that a reply brief is not the proper place to raise new arguments or

facts. *See United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) ("[T]he appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief."). A reply brief is a response to arguments made in the response brief; it does not provide the moving party with a new opportunity to present yet another issue for the court's consideration. *Scottsdale*, 513 F.3d at 553. A non-moving party ordinarily has no right to respond to the reply brief and so as a matter of litigation fairness and procedure, such issues are considered waived. *Id.* The Sixth Circuit has therefore granted a party's motion to strike portions of a reply brief because it "[could] not consider the newly raised claims or additional documents for purposes of th[e] appeal." *United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004).

Although the Court denies Plaintiff's motion to strike Judicial Defendants' reply, it agrees that portions of the argument therein should not be considered. Specifically, both Judicial Defendants' "new" arguments disavowing any employment relationship or discriminatory motive rely on facts asserted in Plaintiff's response briefs. But "[a]s a general rule, a court considering a motion to dismiss must focus only on the allegations in the pleadings." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (cleaned up). "This does not include a plaintiff's response to a motion to dismiss." *Id.* (cleaned up).

Case 2:24-cv-10790-RJW-EAS   ECF No. 30, PageID.369   Filed 09/19/25   Page 18 of 55

Accordingly, the Court here looks only to the allegations of Plaintiff's amended complaint, accepted as true, and declines to consider Judicial Defendants' reply to the extent it relies on facts outside this complaint.

The Court, however, will consider whether Plaintiff's allegations suffice to establish that Judicial Defendants employed her, and whether this issue is fatal to Plaintiff's discrimination and WPA claims.  First, although Judicial Defendants conceded an employment relationship with Plaintiff in their motion, their revocation of this concession was warranted in light of Plaintiff's responsive arguments. Specifically, Plaintiff relied on various cases involving employment-based claims to counter Judicial Defendants' assertions of immunity, so contesting the alleged employment relationship became necessary to distinguish Plaintiff's authority. Second, to the extent Judicial Defendants' rely on the lack of an employment relationship to argue for the first time that Plaintiff's discrimination and WPA claims were insufficiently pled, Plaintiff is not prejudiced by the inability to respond because she already fully briefed the very issue with respect to RMACO Defendants. *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to non-moving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related."); *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987); *see also Abagninin v.*

*AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) ("we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared."); *see also Lee v. Flint Cmty. Sch.*, No. 22-13134, 2023 U.S. Dist. LEXIS 184816, at *6 (E.D. Mich. Oct. 13, 2023).

### C.   Dismissal Analysis

The Court addresses in turn Defendants' various arguments in support of dismissal.  The Court begins with Plaintiff's allegations of employment, since this issue is common to all Defendants.

### a.  Plaintiff's Allegations of Employment

Under both Michigan's ELCRA and WPA, courts use the economic realities test to distinguish between employees and independent contractors. *See Janetsky v. Cnty. of Saginaw*, Nos. 166477-78, 2025 Mich. LEXIS 1387, at *12 (Mich. Jul. 25, 2025); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 853 (6th Cir. 2017) ("To determine whether an employment relationship exists, Michigan courts use the 'economic realities test.'"); *see also Pazan v. Mich. Unemployment Compensation Comm'n*, 343 Mich. 587, 597 (1995) ("Employees are those who as a matter of economic reality are dependent upon the business to which they render service.").  Under this test, "Michigan courts look at four factors: (1) the control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and

(4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id.* (cleaned up).

The Court acknowledges the holding in *Miller v. Stewart*, No. 15-14164, 2016 U.S. Dist. LEXIS 184913 (E.D. Mich. Dec. 13, 2016), adopted by 2017 U.S. Dist. LEXIS 32832 (E.D. Mich. Mar. 8, 2017), that "the determination of whether plaintiff is an employee may be made via summary judgment or trial, but not by way of a motion to dismiss." *Id.* at *8.  However, this conclusion was reached in part because the defendants in *Miller* never even argued that the plaintiff's allegations were insufficient, instead relying on matters outside the pleadings to refute the claim of employment. *Id.* at *7-9.  And the Court stated that "the economic realities test is a fact-intensive inquiry that is *unlikely* to ever be decided on a motion to dismiss," *id.* at *8 (emphasis added), thus recognizing that some circumstances exist where the issue could be resolved at this stage.

Further, because a complaint must go beyond mere labels and conclusions, *Thompson*, 773 F.3d at 750, the Court will decide whether Plaintiff's factual allegations suffice to plausibly allege employment under the applicable legal standard, *see Huntley v. Gunn Furniture Co.*, 79 F. Supp. 110, 116 (W.D. Mich. 1948) ("[T]he court concludes that the complaint in the present case fails to allege facts showing that plaintiffs were employees of the defendant within the meaning of the words 'employ' and 'employee' as used in the [Fair Labor Standards] Act.");

*Hurchanik v. Butler Cnty. Comm'rs*, No. 10-42, 2011 U.S. Dist. LEXIS 17783, at
*10 (S.D. Oh. Jan. 31, 2011) ("Defendants are entitled to dismissal of Plaintiff's
claims because they were not his 'employer' for purposes of federal employment
discrimination statutes."), adopted by 2011 U.S. Dist. LEXIS 17818 (S.D. Oh. Feb.
23, 2011).

At least one court of this district, addressing a claim of employment
discrimination under Title VII,[4] observed that other courts "have squarely held that"
"an attorney who serves on a panel for indigent representation" "is not to be
considered an 'employee' for purposes of employment discrimination statutes . . . ."
*Hurchanik*, 2011 U.S. Dist. LEXIS 17783 at *9; *see also Thomas v. Held*, 941 F.
Supp. 444, 446, 451 (S.D.N.Y. 1996) (dismissing claim under the Age

---

[4] The Sixth Circuit applies a similar yet distinct standard from Michigan's economic
realities test to determine employment under Title VII.  Specifically, courts must
determine "whether a hired party is an employee under the general common law of
agency." *Marie*, 771 F.3d at 352 (citation omitted).  The factors applicable to this
inquiry are:

> (1) the hiring party's right to control the manner and means by which
> the product is accomplished[;] . . . (2) the skill required; (3) the source
> of the instrumentalities and tools; (4) the location of the work; (5) the
> duration of the relationship between the parties; (6) whether the hiring
> party has the right to assign additional projects to the hired party; (7)
> the extent of the hired party's discretion over when and how long to
> work; (8) the method of payment; (9) the hired party's role in hiring and
> paying assistants; (10) whether the work is part of the regular business
> of the hiring party; (11) whether the hiring party is in business; (12) the
> provision of employee benefits; (12) and the tax treatment of the hired
> party.

*Id.* (citation omitted).

Discrimination in Employment Act because the plaintiff, an attorney who served for 25 years on an indigent defense panel before being denied further work, "failed to allege facts from which it may be concluded that he was an employee"); *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1201, 1213-14 (C.D. Ca. 2004) ("the complaint contains insufficient facts to show that the plaintiff," an attorney appointed to represent parolees by California's Board of Prison Terms (BPT), "was an employee" under California law).

RMACO Defendants rely on these three cases in support of dismissal, but the Court concludes that they are distinguishable. Specifically, none involved Michigan's economic realities test at issue here, and Plaintiff nevertheless alleges more (at least concerning RMACO) than the plaintiff in *Hurchanik*, *Thomas*, or *Jacobson*.

In *Hurchanik*, the district court's holding was seemingly limited to address only whether "an attorney who serves on a public defender list but is paid only as an independent contractor should be considered to be an 'employee' of the governmental entity for purposes of Title VII." *Hurchanik*, 2011 U.S. Dist. LEXIS 17783 at *8. The district court did not address the plaintiff's specific employment-related allegations, and it is unclear precisely what facts were alleged to support the issue. And in *Thomas*, the complaint "d[id] not even allege that [the] plaintiff was an employee of [the] defendants"; instead, the plaintiff alleged a "'quasi-

employment'" relationship merely because the defendants "'certified and licensed'" him as a public defender. *Thomas*, 941 F. Supp. at 451.  The district court concluded that the plaintiff's allegations failed to establish his employment under the common-law agency test because "it is readily apparent that he was fully in control of the means and manner through which his work was accomplished"; his work took considerable skill; he was not compelled to take cases and "presumably he could have chosen to represent private litigants with his time"; and defendants did not pay the plaintiff, provide him benefits, or own the location where he worked. *Id.*  Lastly, in *Jacobson*, an employment relationship was lacking because (1) the plaintiff was not salaried and "apparently enjoyed an outside law practice unregulated by the BPT," (2) the BPT did not control his representation of clients, and (3) the BPT did not provide the plaintiff things like benefits or office space. *Jacobson*, 357 F. Supp. 2d at 1214.

Here, Plaintiff alleges that RMACO "assigns," "manages," and "supervises" public defenders in Wayne County, and "implements" MIDC standards. (ECF No. 14, PageID.110, 113).  She asserts that Patton is responsible as RMACO's director for "issues of personnel and contracts with public defenders," and that Patton recruited her as a full-time "lead public defender," work for which RMACO paid her set rates.  Plaintiff alleges that her work schedule was dictated by "RMACO and the Court," and she "did not choose which dockets to cover or which clients to

represent." (ECF No. 14, PageID.111, 13-15).   Plaintiff alleges further that she reported directly to Patton and was required to meet certain requirements in her work and submit to annual performance reviews. (ECF No. 14, PageID.115).

Accepting Plaintiff's allegations as true, RMACO paid her wages to work as a public defender at the 35th District Court.  Although the amended complaint lacks information important in the cases cited by the RMACO Defendants —like whether RMACO provided her benefits or office space—these are not factors of Michigan's economic realities test.  And Plaintiff plausibly alleges that RMACO and Patton had the right to hire, fire, and discipline her where she asserts that (1) RMACO assigns, manages, and supervises public defenders in Wayne County; and (2) Patton as RMACO's director required that Plaintiff meet certain requirements and submit performance reviews, had final authority over personnel and contracts with public defenders, and in fact decided to reduce Plaintiff's caseload.

The Court also concludes that Plaintiff plausibly alleges that the performance of her duties was an integral part of RMACO's business towards the accomplishment of a common goal.  Accepting the amended complaint as true, Plaintiff's work as a public defender was certainly integral to RMACO's business and the common goal of providing indigent defense services in Wayne County.

The Court acknowledges that, as in *Thomas* and *Jacobson*, Plaintiff does not allege that RMACO had any control over her representation of individual clients.

24

Indeed, the amended complaint seemingly concedes the "professional independence" of public defenders in Michigan. (ECF No. 14, PageID.112).  But Plaintiff does allege that RMACO at least controlled her work schedule and assigned dockets. *See Steiger v. Presque Isle Cnty.*, No. 15-14142, 2016 U.S. Dist. LEXIS 154922, at *17 (E.D. Mich. Nov. 8, 2016) ("Defendant Commissioners concededly were able to control [the county prosecutor's] duties (i.e. whether he was responsible for the County's civil docket)").  And more importantly, Plaintiff alleges that she worked full-time as a public defender with RMACO, and thus without any outside, independent law practice.[5]  Given this critical allegation, together with the balance of Michigan's economic realities factors, the Court concludes that Plaintiff has shown sufficient economic dependence to be considered RMACO's employee at this stage of proceedings. *See Pazan*, 343 Mich. at 597 ("Employees are those who as a matter of economic reality are dependent upon the business to which they render service.").

---

[5] The Court acknowledges that, according to Plaintiff's amended complaint, she "has a growing stable of private, pro bono, and potential criminal defense clients who have sought legal services in addition to her Court-assigned files for clients as a public defender." (ECF No. 14, PageID.115-16).  This seemingly contradicts Plaintiff's allegations of working full-time with RMACO.  But construing the facts in a light most favorable to Plaintiff at this preliminary stage of the litigation, the Court defers to her position on this issue unless and until development of the record provides clarification.

The opposite is true, however, concerning Judicial Defendants. Plaintiff merely asserts that her work schedule was dictated by "RMACO and the Court," with no allegations to show that Judicial Defendants controlled her duties in any other respect, paid her a wage, or had any authority to hire, fire, or discipline her. Accordingly, Plaintiff's allegations are insufficient to show that Judicial Defendants employed her under Michigan's economic realities test. As a result, the Court dismisses Plaintiff's WPA claim against Judicial Defendants. *See Whitman v. City of Burton*, 311 Mich. App. 315, 324 (Mich. App. 2015) ("If the plaintiff was not employed at the time of the alleged WPA violation, . . . the plaintiff's case must fail."), vacated on other grounds by 499 Mich. 861 (Mich. 2016).

In contrast, Plaintiff is correct that a lack of employment is not fatal to her ELCRA claim. *See City of Wayne v. Miller*, No. 364138, 2024 Mich. App. LEXIS 4382, at *14 (Mich. App. Jun. 6, 2024) ("even if it were established as a matter of law that Miller was not an 'employee' of the City . . . , that [would not be] fatal to his employment discrimination claim" because the ELCRA "use[s] the words 'person,' 'individual,' 'employee,' and 'applicant' in describing different types of conduct prohibited to employers"); *McClements v. Ford Motor Co.*, 473 Mich. 373, 385 (Mich. 2005) (nonemployees may bring discrimination claims under the ELCRA when the defendant "affected or controlled the terms, conditions, or

privileges of [the plaintiff's] employment").[6]   Nor is an employment relationship

necessary to sustain Plaintiff's First Amendment retaliation claim. *See Blackwell v.*

*Nocerini*, 123 F.4th 479, 482 (6th Cir. 2024) (nonemployee plaintiff plausibly

alleged First Amendment claim based on stalking charges initiated in retaliation for

criticizing a city manager).

In sum, given resolution of this employment issue, the Court dismisses

Plaintiff's WPA claim against the Judicial Defendants, but not against the RMACO

Defendants.   Having resolved this initial dispute common to all Defendants, the

Court now turns to Judicial Defendants' assertions of sovereign and judicial

immunity.

### b. Sovereign Immunity

As an initial matter, Plaintiff does not dispute that Judicial Defendants are

generally entitled to sovereign immunity, instead arguing that the doctrine does not

apply to her official-capacity claims to the extent she seeks declaratory and

prospective relief to reinstate her caseload.  The Court therefore dismisses all claims

against the 35th District Court, and all official-capacity claims against Judge Plakas

and Chief Judge Lowe seeking monetary damages and retrospective relief. *See Pucci*

*v. Nineteenth District Court*, 628 F.3d 752, 760 (6th Cir. 2010) (sovereign immunity

---

[6] To the extent Plaintiff's allegations of control with respect to Judicial Defendants
are lacking, she sufficiently alleges that the judges affected her employment as a
public defender by pressuring Patton for Plaintiff's removal.

"applies to claims against a State . . . and actions against state officials sued in their official capacity for money damages"); *id.* at 764 (applying this doctrine in action by a former state district court employee to dismiss (1) all claims against the court and (2) all claims against the court's chief judge "in his official capacity seeking damages and retrospective relief"). But the doctrine does not bar Plaintiff's claims against the judges in their individual capacities or against them in an official capacity with respect to declaratory and injunctive relief. *See id.* at 765 ("the sovereign-immunity doctrine does not bar Pucci's suit against [the judge] in his individual capacity, or against him in his official capacity with respect to declaratory and injunctive relief") (citations omitted).

To the extent Judicial Defendants distinguish Plaintiff's cases on this issue, essentially arguing that her requested injunctive relief is irrelevant because she has no viable claim against the judges, the Court disagrees. As discussed elsewhere in this opinion, Plaintiff plausibly alleges numerous causes of action against Judge Plakas and Chief Judge Lowe.

### c. Judicial Immunity

"It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004); *see also* Mich. Comp. Laws § 691.1407(5) (a judge is "immune from tort liability for injuries to persons or damages to property if he or she is acting

28

within the scope of his or her judicial . . . authority"). To determine whether an action is judicial and subject to immunity, the Supreme Court has endorsed the "functional approach." *Forrester v. White*, 484 U.S. 219, 224 (1988). Courts must look to "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 229.

And "judicial immunity does not extend to administrative acts, such as certain personnel decisions." *Morgan v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 63 F.4th 510, 519 (6th Cir. 2023). Courts apply a two-prong test to decide whether an act was administrative: "first, the court must determine the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge; second, the court must determine the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* (cleaned up).

> Clearly, the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court. We have indicated that any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one. We have been reluctant to extend the doctrine of judicial immunity to contexts in which judicial decision making is not directly involved.

*Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (cleaned up).

So long as conduct is judicial and not administrative, immunity applies even when a judge acts improperly. *See Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) ("Judicial immunity exists even where a judge acts corruptly or with malice.").

"A judge acts in his judicial capacity when he exercises control over his courtroom." *Cameron*, 38 F.3d at 741; *see also id.* at 742 ("when [the judge] transferred Larry's cases to another case worker, he was controlling the proceedings in his courtroom and therefore was entitled to immunity"). In contrast, "courts reaffirm time and again that hiring and firing is administrative or executive in nature, not judicial." *Morgan*, 63 F.4th at 521; *see also Forrester*, 484 U.S. at 230 ("[the judge] was not entitled to absolute immunity for his decisions to demote and discharge" a court-employed probation officer).

As an initial matter, the Court already rejected Plaintiff's allegation of being employed by Judicial Defendants. Plaintiff does not allege facts showing that the Judge Plakas or Chief Judge Lowe had any ability to hire, fire, or discipline her, and in fact it was Patton who reduced her caseload. *Forrester* and other cases involving court employees are therefore distinguishable. *See Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989) ("[T]he reason for the decision in *Forrester* is clear. A judge is not taking a judicial act when he fires *his personnel*. He is acting as an employer who is also a judge.") (emphasis added). Nevertheless, accepting as true that the judges engaged in a retaliatory pressure campaign intending to remove Plaintiff from her full-time role altogether and resulting in her removal from all Judge Plakas' current *and* future cases, this was administrative conduct that went beyond simply managing their own courtrooms.

30

The Court acknowledges that the judge in *Cameron* was immune under circumstances similar to those here, at least considering the alleged conduct of Judge Plakas in isolation. *See Cameron*, 38 F.3d at 268-71.  The plaintiff at issue, Larry, was a probate court employee who counseled juveniles and "made regular appearances in the probate court," but the defendant judge "later refused Larry admission to his courtroom" and "issued a written order that 'all future assessments on [the judge]'s cases shall be done by . . .' another counsellor." *Id.* at 268-69.  As relevant here, the Court concluded that—because "[a] judge acts in his judicial capacity when he exercises control over his courtroom"—the defendant judge "was acting in his judicial capacity and was entitled to judicial immunity" "when [he] barred Larry from his courtroom." *Id.* at 271.  This is certainly akin to removing Plaintiff from only Judge Plakas' cases.

But the Court nevertheless finds *Cameron* distinguishable because it (1) did not substantively address that the plaintiff was barred from appearing in the judge's current *and* future cases, a fact the Court deems critical here; and (2) involved a lone judge's actions affecting only his own docket, with no allegations of coordination with another judge or that the challenged action was akin to a firing (and intended to completely remove Plaintiff as a public defender at the 35th District Court "and/or make it financially impossible for her to continue there" (ECF No. 14, PageID.126)).

To support this distinction, *Bright v. Gallia Cnty.*, 753 F.3d 639 (6th Cir. 2014), is instructive.   In *Bright*, a public defender sued an Ohio judge after the judge removed the attorney from each felony case he was working before the judge, comprising roughly 70 total cases. *Id.* at 645-46.   The Sixth Circuit concluded that "[the judge]'s actions fell short of expectations, but they were actions judicial in nature and taken in cases over which he had jurisdiction.   As a result, he is entitled to absolute judicial immunity." *Id.* at 648.   As relevant here, the Court reasoned that the judge's conduct "was arguably availing himself of his inherent powers to regulate his courtroom" "[b]y acting only in current cases." *Id.* at 651.   Importantly, the Court distinguished these facts from other cases where judges went beyond their authority by "issu[ing] blanket bans against certain attorneys practicing before them at the time or in the future." *Id.*

But such a blanket ban is what occurred here, as Plaintiff was allegedly removed from her current and future assignments before Judge Plakas, effectively prohibiting her from making a living.   And to the extent the removal effort was spearheaded by Chief Judge Lowe in coordination with Plakas, this certainly did not involve mere "control over [a judge's own] courtroom." *Cameron*, 38 F.3d at 741. Indeed, the other cases Judicial Defendants cite largely involve single judges acting only in current cases. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (judge entitled to immunity with respect to "judicial remarks during the course of a trial");

32

*Kurz v. Michigan*, 548 F.2d 172, 173-74 (6th Cir. 1977) (judge entitled to immunity with respect to contempt proceedings against an attorney based on the attorney's representation in a criminal trial).

Furthermore, *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), although dealing with conduct outside the courtroom and separate from any specific current case, is also distinguishable.  In *Barrett*, the "discrete issue presented [was] whether a judge's instigation of a criminal investigation against a disgruntled litigant, taken to protect the integrity of the judicial system, is a 'judicial act' and therefore entitled to absolute judicial immunity." *Id.* at 257.  In answering this question affirmatively, the Court reasoned that (1) the judge's actions sufficiently involved "the 'case deciding process'" where the judge "fear[ed] that the [litigant's] harassment would cause her to have to recuse herself from future cases involving [him]," and (2) the judge had a duty to report suspected obstruction of justice to the proper authorities. *Id.* at 258.  The Court ultimately concluded that the conduct was judicial in nature and subject to immunity because "[the judge]'s conduct in writing to the prosecuting authorities was to protect the integrity of the judicial decision-making process." *Id.* at 259.  The Court held that "in circumstances in which a judge reasonably perceives a threat to himself or herself arising out of the judge's adjudicatory conduct, the judge's response . . . is a judicial act within the scope of judicial immunity." *Id.*

Admittedly, development of the record here could indeed show that the judges' actions to effectuate the reduction in Plaintiff's caseload were motivated from Plaintiff's conduct in Judge Plakas' cases and thus taken to protect the integrity of the judicial system, such that immunity would apply.  But at this stage Plaintiff's allegations must be taken as true, and she asserts that the judges were only retaliating based on personal bias and her request for an investigation.

For these reasons, the Court concludes at this stage that Judge Plakas and Chief Judge Lowe, with respect to pressuring for Plaintiff's removal and the reduction of her caseload underlying her First Amendment retaliation claim, engaged in administrative conduct that went beyond simply managing their own courtrooms. Although Plaintiff was not a court employee, the judges nevertheless acted in a general manner, unconnected to any specific litigation, to effectuate a blanket ban against Plaintiff in a large subset of both current and future cases.  And this is sufficiently akin to the types of general, administrative decisions, including personnel decisions, that fall outside the scope of judicial immunity. *See Morgan*, 63 F.4th at 520 ("Granted, the Board's decision regarding which counsel should appear on its behalf in a particular case may be analogous to a judge's decisions for which absolute immunity applies, such as whether to recuse, compel counsel to appear, or hold counsel in contempt of court. . . . But [the attorney]'s complaint does not arise from . . . action as to [his] appearance or conduct in any particular case.  It is based

34

on her termination of his employment."); *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (conduct was administrative and judge not entitled to immunity where (1) the "moratorium was a general order, not connected to any particular litigation," (2) "[t]he order did not alter the rights and liabilities of any parties," (3) "no direct appeal [wa]s available," and (4) the same action could have been taken by non-judges.).   Accordingly, Plaintiff's First Amendment claim is not barred by judicial immunity.

To the extent Judicial Defendants argue that the doctrine also applies to bar Plaintiff's ECPA claim against Chief Judge Lowe, the Court disagrees.   The only case Judicial Defendants cite regarding the ECPA, *Blake v. Wright*, 179 F.3d 1003, 1005 (6th Cir. 1999), was decided on the basis of qualified immunity, and the Court only stated in dicta that "[w]e would not strip a judge or prosecutor of absolute immunity because the claim related to a statutory violation and the statute provided an affirmative defense." *Id.* at 1012.   And even if any action by Chief Judge Lowe to order and secure recordings of Plaintiff was "squarely part of his role to oversee courtroom behavior and decorum" (ECF No. 19, PageID.228), the alleged action could have been taken by nonjudges and did not involve any of Lowe's cases in his own courtroom. *Morrison*, 877 F.2d at 466 (chief judge not immune for issuing general moratorium order unconnected to any specific case, even if authorized by law to do so, because he acted pursuant to "delegated administrative authority," "not

judicial authority"). Judicial Defendants therefore fail to meet their burden to establish absolute immunity for Plaintiff's ECPA claim. *See Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) ("as the proponent of the claim of absolute judicial immunity, Judge Clunk bears the burden of establishing that such immunity is warranted").

Lastly, Judicial Defendants argue that Plaintiff's remaining state-law ELCRA and eavesdropping claims are barred by judicial immunity because "making a request to limit Plaintiff's appearance in Judge Plakas' courtroom, if true, is undeniably within the judicial authority of the Defendants." (ECF No. 19, PageID.227). The Court disagrees. First, the Court has already distinguished Judicial Defendants' authority concerning the mere management of a judge's courtroom from Plaintiff's allegations concerning her reduced caseload here. Most importantly, though, the judges' actions to allegedly push for Plaintiff's removal are separate from those underlying these state claims. Specifically, the ECLRA claim is based on Plaintiff being subjected to onerous, discriminatory courtroom policies while she still worked full-time as a public defender at the 35th District Court (and thus before the allegedly improper removal). And her eavesdropping claim is based on Chief Judge Lowe's ordering and securing recordings of Plaintiff's conversations, also while she still worked full-time at the court. Because Judicial Defendants' argument and authority supporting judicial immunity do not address the judges'

specific, distinct conduct underlying Plaintiff's ELCRA[7] and eavesdropping[8] claims, they fail to meet their burden to establish immunity for these claims.

### d.  Plaintiff Plausibly Alleges RMACO is a State Actor

Under § 1983, a plaintiff may pursue a private cause of action for "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011)). "[Nonprofits] are considered state actors for the purposes of § 1983 only if their conduct that allegedly gave rise to the deprivation of [a plaintiff's] constitutional rights may be fairly attributable to the State." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (quotation marks and citation omitted).  The Sixth Circuit utilizes numerous tests to guide this inquiry. *Id.*  At issue here are the public-function and nexus tests. (*See* ECF No. 24, PageID.292-95).

---

[7] To the extent that Judge Plakas instituting policies, even discriminatory policies, for proceedings in his own courtroom would squarely fall within Judicial Defendants' authority granting immunity, it remains unclear whether that was what occurred here.  Construing the amended complaint in the light most favorable to Plaintiff, it is entirely possible that the discriminatory policies were instituted by Chief Judge Lowe, or by Lowe and Judge Plakas in concert, acting in an administrative capacity removed from any specific cases.

[8] To the extent the same conduct underlies Plaintiff's ECPA and eavesdropping claims, the Court already denied Judicial defendants' claim of absolute immunity under the ECPA.

To establish the state-actor element under the public functions test, a plaintiff must show "that the[ defendant] exercise[s] powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Marie*, 771 F.3d at 362 (quotation marks and citation omitted). At the pleading stage, "the burden is on the [plaintiff] to advance historical and factual allegations in their complaint giving rise a reasonable inference that [the defendant's function] is traditionally exclusively in the province of the State. *Id.*

Under the nexus test, "a private party's conduct constitutes state action where there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 636 (quotation marks and citation omitted); *see also Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 612 (6th Cir. 2018) (a private entity may be deemed a state actor "under discrete circumstances, such as when the State exercises coercive power over the private entity, the State provides significant encouragement, either overt or covert to the private entity, or the private actor operates as a willful participant in joint activity with the State or its agents.") (quotation marks and citation omitted). However, state regulation of private entities or mere cooperation between the State and private entities "does not transform private behavior into state behavior." *Thomas*, 882 F.3d at 612. And public funding

by itself is insufficient "to establish a close nexus between state and private actors." *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000).

Here, Plaintiff alleges that RMACO serves a traditional public function because it (1) assigns and manages "attorneys providing constitutionally mandated public criminal defense services," including by implementing legislatively-mandated MIDC standards; (2) acts jointly with government entities like municipalities, courts, and MIDC to administer this function, and (3) is funded by the state. (ECF No. 14, PageID.110-13).  Plaintiff's amended complaint lacks any specific reference to the nexus text, but she argues that she "can demonstrate that Defendants were state actors under both the public-function and nexus tests." (ECF No. 24, PageID.292-95).  Accepting Plaintiff's facts as true, the Court concludes that RMACO is a state actor under both tests.

In *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that public defenders do not "act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325. But the Court stated that public defenders may be state actors under other circumstances, like when "making hiring or firing decisions on behalf of the State" or "performing certain administrative and possibly investigative functions." *Id.* at 324-25; *see also Georgia v. McCollum*, 505 U.S. 42, 54 (1992) (following *Polk*, "the determination whether a public defender is a state actor for a particular purpose

39

depends on the nature and context of the function he is performing"). And the Sixth Circuit has applied this administrative exception to conclude that a county's public defender office and commission were state actors with respect to the plaintiff's claim of an unconstitutional "policy or custom of failing to seek indigency hearings on behalf of criminal defendants facing jail time for unpaid fines." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 597, 612-13 (6th Cir. 2007).

Given this authority, the Court finds *Carl v. Muskegon Cnty.*, 763 F.3d 592 (6th Cir. 2014), instructive. In *Carl*, the Sixth Circuit concluded that a private psychiatrist providing healthcare to prison inmates was a state actor under the public function test. *Id.* at 595-98. The panel specifically reasoned that "states must provide medical care to those in custody" and "may not escape § 1983 liability by contracting out or delegating its obligation to provide medical care to inmates." *Id.* at 595-96.

As with the provision of adequate medical care in prisons, the State of Michigan is constitutionally obligated to provide counsel for indigent defendants. U.S. Const., amend, VI; Mich. Const., art. I, § 20; *see also Jensen v. Menominee Circuit Judge*, 382 Mich. 535, 540 (Mich. 1969) ("By the laws of Michigan and the Constitution of the United States, an indigent accused of a crime has a right to be provided counsel at public expense to assist in his defense."). And Plaintiff alleges that this is a historical government function, with some localities employing public defenders directly and others, like in the case of Wayne County and RMACO,

"us[ing] an assigned counsel or contract model to provide indigent defense services." (ECF No. 14, PageID.113). Applying the reasoning of *Carl*, the state should not be able to escape liability under § 1983 merely because its duty is delegated to private entities like RMACO.

Although *Polk* precludes finding state action concerning a public defender's representation of clients, it does not apply to a public defense entity's administrative hiring and firing decisions like the reduction to Plaintiff's caseload alleged here (which she claims was an effective discharge). Because RMACO (via Patton at its director) engaged in an administrative, managerial decision distinct from a lawyer's traditional function as counsel *but* still involving the constitutionally-mandated, historical state duty to provide indigent defense services, RMACO Defendants are state actors under the public function test. Indeed, where a legislatively-appointed public defender's firing of two assistant public defenders constituted state action, *see Branti v. Finkel*, 445 U.S. 507 (1980) (holding that a public defender, in making personnel decisions on behalf of the State, is a state actor who must comply with constitutional requirements), the Court will not conclude differently only because the same essential action was taken by private parties. *See also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 625 (1991) ("If a government confers on a private body the power to choose the government's employees or officials, the private body will be bound by the constitutional mandate of race neutrality.").

Concerning the nexus test, Plaintiff's allegations that RMACO is funded and regulated by the state do not, by themselves, establish state action.  *See Thomas*, 882 F.3d at 612; *Lansing*, 202 F.3d at 830.   But Plaintiff also alleges that Patton, RMACO's director, reduced her caseload *because of* the request to do so (and pressure to remove Plaintiff from her role completely) by Judge Plakas and Chief Judge Lowe. (ECF No. 14, PageID.117-18, 123-25).  And the judges are indisputably state actors.  Because Plaintiff alleges that the challenged action was initiated by and taken at the behest of two state judges, the Court concludes that there is a sufficiently close nexus between the action and the State.  *See Thomas*, 882 F.3d at 612 (state action implicated "when the State provides significant encouragement . . . or the private actor operates as a willful participant in joint activity with the State or its agents"); *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 677 (6th Cir. 2018) (complaint plausibly alleged state action by private foster care organizations where "a number of [the] plaintiffs' allegations concern conduct the child-care organizations and DHS employees undertook together"); *contra Marie*, 771 F.3d at 363 ("There are no allegations . . . to show that the State had any connection to these types of personnel decisions within the [Defendant] Red Cross.  Thus, [Plaintiffs] have not shown any nexus between the challenged action and the State under this test.").

### e.  Policy or Custom

Having concluded that RMACO Defendants engaged in state action, the Court disagrees with their alternate argument that Plaintiff's § 1983 claim must be dismissed under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), for lacking any alleged policy or custom motivating her reduced caseload.

A plaintiff asserting a municipal liability claim under *Monell* "must connect the employee's conduct to a municipal 'policy' or 'custom.'" *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (quoting *Brown*, 520 U.S. at 403).  To do so, a plaintiff must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  A plaintiff then "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original).

Because Plaintiff alleges that Patton was the final decision maker for RMACO on personnel issues, contracted with public defenders to provide indigent defense services in Wayne County, and acted as RMACO's director to deliberately and

illegally reduce her caseload, Plaintiff has satisfied the pleading requirements of *Monell*.

### f.   First Amendment Retaliation—Adverse Action

"A plaintiff alleging First Amendment retaliation must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Pucci*, 628 F.3d at 767 (cleaned up).

Only RMACO Defendants argue that Plaintiff insufficiently pled this claim, and only concerning the second element.   The Court must therefore determine whether Plaintiff "has sufficiently alleged that an adverse action was taken against her that 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019) (citation omitted).   "[E]xamples of adverse actions 'include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote.'   Constructive discharge may also constitute an adverse action for First Amendment purposes." *Id.* (citations omitted).

According to RMACO Defendants, "Plaintiff has no basis to allege that she suffered an 'adverse employment action' from her position by anyone or in any capacity" because she (1) does not sufficiently allege that RMACO employed her

and (2) at most alleges only that "her hours were *reduced* after she <u>freely agreed</u> to handle only Judge Gerou's docket after meeting with Patton." (ECF No. 18, PageID.191-92 (emphasis in original)).   But this argument spins Plaintiff's allegations in a light most favorable to RMACO Defendants, not Plaintiff.

First, the Court already concluded that Plaintiff sufficiently alleged an employment relationship with RMACO.   And though Plaintiff acknowledges initially agreeing to Patton's suggestion that she stop appearing before Judge Plakas and be assigned only cases from Judge Gerou going forward, this was only with the understanding that her caseload would stay the same.   Indeed, Plaintiff alleges that Patton, when she ultimately cut Plaintiff's workload and income by half, was refusing to speak with Plaintiff's attorney about the judges' removal efforts or her reassignment.   And according to Plaintiff, Patton threatened to terminate Plaintiff's employment outright if she filed any lawsuit against Defendants.

Accepting Plaintiff's facts as true and construed in the light most favorable to her, Patton reduced her caseload and income by half, without Plaintiff's consent, in retaliation for her criticism of staff and reporting of misconduct at the 35th District Court.   In the Court's view, this was at least akin to a demotion.   And considering the alleged impact on Plaintiff's livelihood, Patton's decision certainly would chill or silence a person of ordinary firmness from future First Amendment activities.

Accordingly, the Court rejects RMACO Defendants' argument that Plaintiff fails to plead adverse action.

### g. ELCRA Claim—Notice Pleading

For this claim, Plaintiff alleges that Defendants collectively held her to "onerous, alleged courtroom policies" not required of her white male counterparts. (ECF No. 14, PageID.129).  The only other reference to this alleged discrimination in the amended complaint is that the Judge Plakas' court staff "[r]epeatedly claim[ed] . . . that Plaintiff violated alleged courtroom-specific policies that Plaintiff was never aware of, when these alleged policies are never followed by said staff members, nor are these policies required of Plaintiff's white male co-public defender." (ECF No. 14, PageID.116).

RMACO Defendants argue that this claim must be dismissed because Plaintiff refers to Defendants collectively and alleges no specific facts of RMACO's or Patton's involvement with the alleged discriminatory policies in Judge Plakas' court. The Court agrees, concluding that the ELCRA claim against RMACO Defendants gives insufficient notice of the grounds on which it rests. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (explaining that a pleading referring to all defendants generally and categorically is insufficient to allege each individual's personal involvement and, therefore, liability); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against

government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."); *Iqbal*, 556 U.S. at 677 ("each Government official . . . is only liable for his or her own misconduct."); *see also Marcilis*, 693 F.3d at 596 ("simply lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct fails to satisfy the minimum standard that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests.") (cleaned up).

The Court also disagrees with Plaintiff's counterargument that Patton is liable under the ELCRA for failing to report the discriminatory policies and/or agreeing to reduce Plaintiff's caseload at the behest of judges with discriminatory motives. First, even though the amended complaint faults Patton for not reporting Plaintiff's various concerns at the court, Plaintiff does not allege that Patton had any duty to report violations under the ELCRA. Next, although the ELCRA allows retaliation claims for adverse action taken against those opposing or complaining of violations of the act, Mich. Comp. Laws § 37.2701(a), Plaintiff makes no such claim here. Her ELCRA claim is based only the *imposition* of allegedly discriminatory policies and being treaded differently from similarly situated individuals, not that Defendants retaliated for her reporting this discrimination. Admittedly, Plaintiff does factually allege that Defendants retaliated against her for reporting misconduct, including the

alleged discrimination, but she never connected this to her specific ELCRA claim. Instead, Plaintiff chose to couch these allegations only in terms of First Amendment retaliation. And considering only the imposition of the allegedly discriminatory policies, Plaintiff fails to allege how, or even that, Patton and RMACO were involved. The Court therefore dismisses the ELCRA claim against RMACO Defendants.

### h. Qualified Immunity and Clearly Established Law

When a defendant raises a qualified-immunity defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity.[9] *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020); *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). This issue should be resolved at the earliest stage possible in litigation, though the Sixth Circuit generally prefers such decisions be made after discovery, on a motion for summary judgment. *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504-05 (6th Cir. 2025); *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

"Qualified immunity is, however, resolvable at the motion-to-dismiss stage when the *complaint* establishes the defense." *Hodges*, 139 F.4th at 505 (quotation

---

[9] This issue is limited only to Plaintiff's First Amendment retaliation claim against all Defendants, as well as her ECPA and eavesdropping claims against Chief Judge Lowe.

marks and citation omitted; emphasis in original); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery") (cleaned up); *Sterling Hotels*, 71 F.4th at 466 ("when a defendant moves to dismiss on qualified-immunity grounds, district courts cannot avoid ruling on the issue") (quotation marks and citation omitted).

"At the pleadings stage, . . . the court takes the complaint's factual allegations as true and decides whether—based on those facts—the defendant is entitled to qualified immunity." *Sterling Hotels*, 71 F.4th at 467; *see also Marvaso v. Sanchez*, 971 F.3d at 605 ("[T]o overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored.") (quotation marks and citations omitted).

An official is entitled to qualified immunity if their actions do not violate "clearly established" law. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or

49

constitutional rights of which a reasonable person would have known.") (quotation marks and citations omitted).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11-12 (quotation marks and citations omitted).

While there need not be a case directly on point for law to be clearly established, existing precedent must place the question "beyond debate." *Mullenix*, 577 U.S. at 14; *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Sources of clearly established law include, from most to least persuasive, Supreme Court precedent, controlling Sixth Circuit precedent, this Court's precedent, or a "robust consensus of cases of persuasive authority." *See Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012); *Ashcroft*, 563 U.S. at 742.

As an initial matter, Plaintiff's ECPA and state-law eavesdropping claims against Chief Judge Lowe are barred by qualified immunity.  Concerning the ECPA, Plaintiff merely argues that it is clearly established from the statute's text "that the ECPA prohibits an individual from procuring another person to record a private conversation." (ECF No. 23, PageID.273).  And she gives no response whatsoever to Judicial Defendants' assertion of qualified immunity concerning the eavesdropping claim.  Because Plaintiff provides no cases whatsoever to refute Judicial Defendants' argument, let alone binding cases (or a robust consensus of

50

persuasive cases) with facts sufficiently similar to those alleged here, she fails to establish violations of clearly established law. *See Guertin v. Mich.*, 912 F.3d 907, 932 (6th Cir. 2019) ("Plaintiffs must generally identify a case with a fact pattern similar enough to have given 'fair and clear warning to officers' about what the law requires.") (citation omitted).

Plaintiff's ECPA and eavesdropping claims are therefore dismissed. *See Scott v. City of Saginaw*, 2024 U.S. Dist. LEXIS 113649, at *18-20 (E.D Mich. Jun. 27, 2024) (dismissing claim against police officers under Rule 12(b)(6) where the plaintiff made no showing of a violation of clearly established law).  Accordingly, the Court need not address Judicial Defendants' additional argument that these claims were insufficiently pled.

Concerning Plaintiff's First Amendment retaliation claim, she largely relies on *Pucci*, 628 F.3d 752, and *Buddenberg*, 939 F.3d 732, to show that Defendants violated clearly established law.

In *Pucci*, the plaintiff, a former administrative employee for Michigan's Nineteenth District Court, sued the court and the court's chief judge, "claim[ing] that she was terminated in retaliation for her complaints to state court officials about [the judge]'s use of religious language from the bench, in violation of her right to free speech." *Id.* at 755.  The Sixth Circuit denied the chief judge qualified immunity on the plaintiff's retaliation claim, stating in relevant part that "[t]he law governing First

Amendment retaliation claims has been well-developed by this jurisdiction's prior opinions." *Id.* at 768.

> The facts of this case's retaliation claim dovetail with other successful First Amendment claims where a plaintiff was allegedly terminated because he or she publicly disclosed serious-and often unconstitutional-misconduct by superiors. . . . At the time of Pucci's complaints, the law had clearly established that her comments were constitutionally protected as a matter of public concern and that termination in response to such comments was a violation of her First Amendment rights.

*Id.* at 768-69.

In *Buddenberg*, the plaintiff, a former employee for a county "Health District," sued the relevant defendant, the Health District's attorney, for facilitating and contributing to a supervisor's retaliation against the plaintiff "for reporting ethical violations she observed." *Buddenberg*, 939 F.3d at 735.  As relevant here, the panel concluded that the plaintiff plausibly alleged a violation of clearly established law because "[w]e have long recognized that a public employer may not retaliate against an employee for her exercise of constitutionally protected speech."  "[The plaintiff]'s right to report public corruption, unethical conduct, and sex-based discrimination within her workplace was clearly established." *Id.* at 741.

In the Court's view, these cases clearly establish that public employers cannot take adverse employment action in response to an individual's speech criticizing public officials and/or reporting misconduct in a public institution (at least where the reporting is not a regular duty of the plaintiff's position, *see Buddenberg*, 939 F.3d

at 739-40).  Critically, Plaintiff allegedly engaged in such speech.  And as discussed, Plaintiff plausibly alleges at this stage that RMACO Defendants are state actors who employed her and ultimately reduced her caseload and income by half, effectively constituting a demotion if not constructive discharge.  Under these circumstances, the Court denies RMACO Defendants' request for qualified immunity at this preliminary stage.

Judicial Defendants, however, are entitled to qualified immunity with respect to Plaintiff's First Amendment retaliation claim.  As stated, Plaintiff's allegations do not suffice to show that she was employed by Judicial Defendants.  Accepting Plaintiff's facts as true and in a light most favorable to her, the judges allegedly pressured Patton to effectively demote or constructively discharge her as a public defender with the court.  Accordingly, because Plaintiff provides no caselaw involving or even substantially similar to First Amendment retaliation by a non-employer who merely affected the plaintiff's employment, she fails to meet the burden to refute Judicial Defendants' assertion of immunity.  Plaintiff's First Amendment retaliation claim against Judicial Defendants is therefore dismissed.

In sum, the Court dismisses in their entirety (1) all claims against the 35th District Court, (2) Plaintiff's WPA and First Amendment retaliation claims against Judge Plakas and Chief Judge Lowe, (3) Plaintiff's ECPA and eavesdropping claims against Chief Judge Lowe, and (4) Plaintiff's ELCRA claim against RMACO

Defendants.  The surviving claims against RMACO Defendants are those under the First Amendment and the WPA.  Concerning Judge Plakas and Chief Judge Lowe, all that remains is Plaintiff's ELCRA claim.  This claim may proceed, but only to the extent that it is against the judges (1) in their individual capacities or (2) in their official capacities with respect to declaratory and injunctive relief only.

\* \* \*

For the reasons given, the Court ORDERS that Plaintiff's motion to strike (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that RMACO Defendants' motion to dismiss (ECF No. 18) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Judicial Defendants' motion to dismiss (ECF No. 19) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that all claims against the 35th District Court are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that all official-capacity claims against Judge Plakas and Chief Judge Lowe seeking monetary damages and retrospective relief are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's WPA and First Amendment retaliation claims against Judge Plakas and Chief Judge Lowe are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's ELCRA claim against RMACO Defendants is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's ECPA and state-law eavesdropping claims against Chief Judge Lowe are DISMISSED WITH PREJUDICE.

Dated: September 19, 2025                    s/Robert J. White
                                             Robert J. White
                                             United States District Judge