UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUNDUS JABER,<br><br>          Plaintiff,<br><br>v.<br><br>35TH DISTRICT COURT, et al.,<br><br>          Defendants. | Case No. 24-cv-10790<br><br>Honorable Robert J. White |

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

This case arises from Plaintiff Sundus Jaber's time practicing as a public defender at Michigan's 35th District Court, and involves claims against Defendants the 35th District Court, Judge James Plakas, Chief Judge Ronald W. Lowe, the Regional Managed Assigned Counsel Office for Wayne County (RMACO), and Teresa Patton, RMACO's director.[1] (ECF No. 14, PageID.109-26). Before the Court is Plaintiff's motion for reconsideration under E.D. Mich. L.R. 7.1(h)(2)(A). (ECF No. 47). The Court has not allowed responsive briefing or oral argument. *See* L.R. 7.1(h)(3). Also before the Court is Plaintiff's motion to stay the case pending a

---

[1] The 35th District Court, Judge Plakas, and Chief Judge Lowe are collectively referred to as "Judicial Defendants." RMACO and Patton are collectively referred to as "RMACO Defendants."

decision on the reconsideration motion. (ECF No. 48). For the following reasons, the Court denies both motions.

## I.    Background

RMACO is a nonprofit entity that manages the assignment, coordination, and supervision of public defenders in Wayne County, including at the 35th District Court. (ECF No. 14, PageID.110-13). Plaintiff is female, practices the Islamic faith, and is a Palestinian-American attorney. (ECF No. 14, PageID.110). According to Plaintiff, Patton, as RMACO's director, recruited her to work as one of two lead public defenders at the 35th District Court, and Plaintiff began this work in September 2023. (ECF No. 14, PageID.114).

Plaintiff alleges that she endured near-daily harassment from Judge Plakas' staff while working cases at the 35th District Court. (ECF No. 14, PageID.115-16). Plaintiff alleges further that Patton essentially ignored her concerns about the harassment; Plaintiff also filed a complaint and request for investigation regarding the harassment with Judge Plakas and the court's prior chief judge, and she allegedly experienced resultant retaliation via similar harassment from other court staff. (ECF No. 14, PageID.116-17, 120-22). And according to Plaintiff, once Chief Judge Lowe assumed his position in January 2024, (1) the harassment against her by court staff increased significantly, (2) Judge Plakas and Chief Judge Lowe asked Patton to remove her as one of the court's public defenders in retaliation for seeking an

2

investigation, and (3) RMACO ultimately cut her hours in half later that year, without cause, due to pressure from Chief Judge Lowe and Judge Plakas. (ECF No. 14, PageID.117-18, 122-26).

Plaintiff specifies that Patton, under pressure from Chief Judge Lowe and Judge Plakas to "fire Plaintiff" as a public defender with the court, ultimately removed her from all Judge Plakas' cases, cutting her workload and income by half, all while refusing to speak with Plaintiff's attorney about the judges' efforts or this reassignment. (ECF No. 14, PageID.123-26).  Plaintiff essentially accuses Defendants, because of their "disfavor" towards her, of collectively "attempting to harass Plaintiff into leaving employment at the Court and/or make it financially impossible for her to continue there." (ECF No. 14, PageID.126).

Plaintiff asserted claims against all Defendants for (1) First Amendment retaliation under 42 U.S.C. § 1983; (2) violating Michigan's Whistleblowers' Protection Act (WPA); and (3) sex, religious, and/or ethnic discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA).  She asserted additional claims against Chief Judge Lowe only under the Electronic Communications Privacy Act (ECPA) and Michigan's eavesdropping statute. (ECF No. 14, PageID.109-10, 126-31).

Ruling on Judicial Defendants' and RMACO Defendants' respective motions to dismiss, the Court dismissed with prejudice (1) all claims against the 35th District

3

Court, (2) all official-capacity claims against Judge Plakas and Chief Judge Lowe seeking monetary damages and retrospective relief, (3) Plaintiff's WPA and First Amendment claims against Judge Plakas and Chief Judge Lowe, (4) Plaintiff's ECPA and eavesdropping claims against Chief Judge Lowe, and (5) Plaintiff's ELCRA claim against RMACO Defendants. (ECF No. 30, PageID.353-54).[2] As relevant here, the Court concluded that Plaintiff—with respect to her First Amendment retaliation claim—failed to refute Judicial Defendants' assertion of qualified immunity because (1) "Plaintiff's allegations do not suffice to show that she was employed by Judicial Defendants" and (2) "Plaintiff provides no caselaw involving or even substantially similar to First Amendment retaliation by a non-employer who merely affected the plaintiff's employment." (ECF No. 30, PageID.402-04). Plaintiff now moves for reconsideration of the Court's decision to dismiss the First Amendment claim against the judges. (ECF No. 47).

## II. Legal Standard

E.D. Mich. L.R. 7.1(h)(2)(A) allows for reconsideration of a non-final order when "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court

---

[2] The surviving claims are (1) those against RMACO Defendants under the First Amendment and the WPA; and (2) the ELCRA claim against Judge Plakas and Chief Judge Lowe, but only to the extent that it is against the judges (a) in their individual capacities or (b) in their official capacities with respect to declaratory and injunctive relief only.

4

at the time of its prior decision[.]"  "'The purported mistake must be some substantive error in the court's legal analysis or factual findings based on the record at the time of the decision—it cannot be the outcome itself.'" *United Wholesale Mortg., LLC v. Am.'s Moneyline, LLC*, No. 22-10228, 2025 U.S. Dist. LEXIS 27495, at *7 (E.D. Mich. Feb. 14, 2025) (quoting *Good v. Biolife Plasma Servs., L.P.*, 647 F. Supp. 3d 555, 559-60 (E.D. Mich 2022)).

"Motions for reconsideration of non-final orders are disfavored." L.R. 7.1 (h)(2).  Further, "[i]t is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a [decision] was issued.'" *Plumbers Local 98 Defined Ben. Pension Fund v. Dan Allor Plumbing & Heating Co.*, No. 23-11021, 2025 U.S. Dist. LEXIS 64153, at *2-3 (E.D. Mich. Apr. 3, 2025) (quoting *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012), *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007)).

**III.  Analysis**

Accepting that she was not employed by Judicial Defendants, Plaintiff argues that the Court made a mistake in dismissing her First Amendment claim against Judge Plakas and Chief Judge Lowe because it is clearly established under Sixth Circuit precedent that non-employer third parties, including public officials, violate a plaintiff's constitutional rights when they substantially and adversely affect a

plaintiff's employment in retaliation for the plaintiff's protected speech—precisely what occurred here when the judges pressured Patton to effectively fire Plaintiff and ban her from all future work at the 35th District Court. Plaintiff cites *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010), and *Josephson v. Ganzel*, 115 F.4th 771, 788 (6th Cir. 2024), in support.

In *Fritz*, the Sixth Circuit specifically addressed "whether it constitutes retaliation for a public official to speak with a private employer about an employee's protected conduct in such a way as to either defame the employee or to threaten her economic livelihood directly or indirectly." *Fritz*, 592 F.3d at 724. The Court answered this question affirmatively, holding that "[a] person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract or to have her change her behavior." *Id.* at 726.

A public official's ability to terminate the employment is not dispositive. *Id.* Instead, the "power to substantially affect" an employee's livelihood could be enough to establish an adverse action. *Id.* Similarly, actions "designed to threaten" a person's "economic livelihood" are likely to deter a person of ordinary firmness from engaging in protected speech. *Id.* at 728. Simply put, "a credible threat to the nature and existence of one's ongoing employment is of a similar character to the other recognized forms of adverse action—termination, refusal to hire, etc.—even if

6

perpetrated by a third party who is not the employer." *Id.*  The *Fritz* Court ultimately concluded that the plaintiff plausibly alleged a First Amendment retaliation claim against non-employers (a Township and its officials) where she was fired after a defendant public official's negative statements to her employer. *Id.* at 723-29.

In *Josephson*, the plaintiff sued various medical school personnel after the school allegedly failed to renew his contract in retaliation for his protected speech regarding gender dysphoria. *Josephson*, 115 F.4th at 777-82.  As relevant here, the Court, relying on *Fritz*, concluded that various officials uninvolved in the non-renewal decision were still potentially liable for retaliation where they monitored and harassed the plaintiff leading up to the non-renewal, thereby threatening his economic livelihood. *Id.* at 787-89.

As an initial matter, the Court agrees with Plaintiff that this authority, particularly *Fritz*, clearly establishes that a non-employer public official, like each judge here, is liable under the First Amendment for substantially affecting a plaintiff's employment and threatening their economic livelihood—like by encouraging an employer to terminate the plaintiff—in response to protected speech. *See Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," and "[a] clearly established right is one that is sufficiently clear that

every reasonable official would have understood that what he is doing violates that right.") (quotation marks and citations omitted).

*Fritz* clearly qualifies as caselaw involving "First Amendment retaliation by a non-employer who merely affected the plaintiff's employment." (*See* ECF No. 30, PageID.402-04). And accepting as true that the judges engaged in a retaliatory pressure campaign intending to remove Plaintiff from her full-time role, the facts here are sufficiently similar to those in *Fritz* such that qualified immunity is inappropriate at this early stage. *See Guertin v. Mich.*, 912 F.3d 907, 932 (6th Cir. 2019) ("Plaintiffs must generally identify a case with a fact pattern similar enough to have given 'fair and clear warning to officers' about what the law requires.") (citation omitted); *see also Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) ("[T]o overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored*.") (emphasis added; quotation marks and citations omitted).

However, Plaintiff never cited these cases or any similar authority when Defendants' respective motions to dismiss were decided.[3] Accordingly, contrary to L.R. 7.1(h)(2)(A), the mistake at issue here was *not* based on the record *and law* before the Court *at the time of its prior decision*. Addressing this issue, Plaintiff argues as follows:

> Since there was no dispute about the employment relationship when Plaintiff filed her response to the motion, citing cases involving actions of a non-employer did not appear necessary or appropriate.[2]
>
> ---
>
> [2]Judicial Defendants first raised a question as to whether they were Plaintiff's employer in their reply brief, a brief to which the Local Rules do not provide for a response. *See* E.D. Mich. LR 7.1(e). Plaintiff moved to strike Judicial Defendants' reply brief on the basis that it raised new arguments. However, the Court ultimately denied that motion.

(ECF No. 47, PageID.500, 500 n. 2).

Plaintiff elaborates that she "could not have anticipated that Judicial Defendants would contest the employment relationship when she filed her response; therefore, she had no opportunity to provide case law addressing First Amendment retaliation by non-employers." (ECF No. 47, PageID.505).

---

[3] When a defendant raises a qualified-immunity defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020); *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

9

The Court acknowledges that Judicial Defendants conceded an employment relationship with Plaintiff in their motion to dismiss, only disputing this element for the first time in their reply. (*See* ECF No. 30, PageID.368-70). But the Court nevertheless concludes that Plaintiff's newly-cited authority specific to non-employer defendants could have been raised before the Court's decision, *see Plumbers Local 98*, 2025 U.S. Dist. LEXIS 64153 at *2-3, because RMACO Defendants (1) argued in their motion that Plaintiff was not an employee and (2) also moved to dismiss in part based on qualified immunity. As particularly relevant from RMACO Defendants' qualified immunity argument, they claimed that "there is simply no evidence that Patton acted unreasonably or that a public official under similar circumstances would believe changing the work assignment of an independent contractor [i.e., a non-employee] would be a constitutional violation . . . ." (ECF No. 18, PageID.200).

Plaintiff was on notice when responding to Defendants' respective motions to dismiss that *Fritz*, *Josephson*, and any other similar caselaw involving non-employers was relevant, if not to Judicial Defendants, then at least to RMACO Defendants. Under these circumstances, the Court denies Plaintiff's motion for reconsideration as improper attempt to raise a new argument that could have been raised before the Court's decision on Defendants' motions.

\* \* \*

For the reasons given, the Court ORDERS that Plaintiff's motion for reconsideration (ECF No. 47) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to stay (ECF No. 48) is DENIED as moot.

Dated: December 16, 2025            s/Robert J. White
                                Robert J. White
                                United States District Judge