UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| SUNDUS K. JABER, | |
| Plaintiff, | Case No. 24-CV-10790 |
| v. | |
| | Honorable Robert J. White |
| 35TH DISTRICT COURT, et al., | |
| Defendants. | |

**PRELIMINARY NOTE**

NOW COMES, Plaintiff, Sundus K. Jaber, and states:

1. If Plaintiff were afraid to tell a Judge information that would significantly hurt her in a measurable way, this matter wouldn't be before the Court. If Plaintiff had not mailed the Judicial Defendants responses to their discovery request, she would not have been afraid to say so. Plaintiff didn't ask for mercy in her response to the Court's show cause order. Instead, she invited judicial scrutiny to review privileged work to verify her statements. (ECF No. 63).

2. Further, Plaintiff is confident that RMACO Defendants' omissions are legally significant, regardless of the Court's recent orders. Their failure to supplement the record in their possession after the order demonstrates that the omissions affected

the Court's analysis. Rather than correcting the record, they attempted to use the order for additional tactical advantage, which makes the matter more serious. This conduct warrants referral of Mr. Romer for disciplinary review pursuant to E.D. Mich. LR 83.22(b). A referral does not guarantee that he will be disciplined; it guarantees only an independent review.

3. The Judicial Defendants also filed a motion that had the same material omissions, thereby violating the same authorities as the RMACO Defendants. The only difference was that the omitted material had already been docketed, making the Court aware that the Judicial Defendants had not presented a complete record in support of their motion. Additionally, the Court was aware that, when the Judicial Defendants unlawfully filed ECF No. 49, they cited authority that had been abolished years earlier and confidently asserted objective misrepresentations. Nevertheless, the Court granted the motion and canceled the hearing without notice or an opportunity to supplement the record first.

4. Plaintiff has never experienced a hearing being canceled without it being rescheduled. The cancellation deprived Plaintiff of the opportunity to present her laptop, phone, and passport to the Court while defense counsel was present to address the relevant facts, arguments, and evidence. A hearing would have been more useful than litigating a discovery dispute.

5. Plaintiff relied on the hearing to supplement the record. Plaintiff called the Clerk's Office soon after submitting her response to the Judicial Defendants' motion to

compel and was informed that a corrected response would require a new filing, and that the Court would be aware a change was forthcoming because a nonpublic note would appear when the Court opened that filing. Before filing a corrected response, Plaintiff did some research and decided to wait to correct errors and amend at the same time, after ascertaining certain information. When the Court later set a hearing after the Judicial Defendants filed their reply, Plaintiff again relied on the hearing to supplement the record.

6.  Given how easy it is to lie to a Federal Judge and get away with it, Plaintiff did not believe a sworn statement from her or any of the parties or their attorneys would be very meaningful. But since the Court canceled the hearing scheduled for 5/21/26, that is the way she will support her motions moving forward. It will be more convenient for Plaintiff anyway. Following up has been a time-consuming headache. While Plaintiff is dealing with a health issue that is separate and not needed to support this, considering how severe RMACO Defendants' omissions, subsequent conduct, and lack thereof are legally. Accordingly, Plaintiff is no longer going to waste time obtaining a letter from her primary care doctor. She did give her doctor permission to speak with the Cour should the Court have questions. If the Court would like to speak to her primary care physician or obtain any other verification, they know where to find Plaintiff.

7.  Plaintiff wished to make the Court aware of some changes to her motion after Mr. Romer sent a concurrence request for a motion to dismiss less than 24 hours after

Plaintiff emailed the Court, with defense counsel copied, and after the motion for reconsideration referenced below was filed. That filing addressed the seriousness of the conduct under the applicable legal standards, including the failure to supplement the record and the potential disciplinary implications. This was the third documented instance since the Court's April 10 Order in which Mr. Romer used motion practice in a retaliatory or otherwise improper manner after Plaintiff presented the relevant conduct to the Court or after his litigation strategy proved unsuccessful.

8. Lastly, Plaintiff will definitely be amending. In light of the Court canceling the hearing without notice and granting the Judicial Defendants' motion she has been researching what she needs to do moving forward.

Respectfully submitted,

Date: 5/20/2026

/s/Sundus K. Jaber
Sundus K. Jaber
Plaintiff, Pro Se

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

SUNDUS K. JABER,

     Plaintiff,

v.

     Case No. 24-CV-10790

     Honorable Robert J. White

35TH DISTRICT COURT, et al.,

     Defendants.

**PLAINTIFF'S MOTION FOR RECONSIDERATION[1]**

Plaintiff, Sundus K. Jaber, respectfully moves this Court to reconsider its

April 10, 2026, Order granting RMACO Defendants' Motion to Compel and

vacate its accompanying show cause order pursuant to Federal Rule of Civil

---

[1] Plaintiff did not seek concurrence as this motion also addresses the Court's show cause order that was issued along with the order granting RMACO Defendant's motion to compel. Plaintiff acknowledges that E.D. Mich. LR 7.1(h)(2) provides the usual local mechanism for reconsideration of non-final orders. But even where relief under the local rule is disputed as untimely, the Court retains authority under Fed. R. Civ. P. 54(b) to revise an interlocutory order before final judgment.

Procedure 54(b), and the Court's inherent/common authority to correct clear error and prevent manifest injustice. Plaintiff incorporates her initial response to the Court's show cause order and all the exhibits that are now docketed at ECF No. 63.

RMACO Defendants' motion did not simply omit background. They were material to the Court's analysis of service, urgency and prejudice that was the factual gap the Court later identified. They also omitted material context as to why Plaintiff would ever object in the first place, that they sanctions request was a pre-text, that that they threatened sanctions before Plaintiff emailed secondary objections, that their RFA-related sanctions was a way to circumvent the Court's 9/9/26 order and establishes who was ignoring who without justification.

Lastly, Plaintiff respectfully submits that the Court correctly identified the governing rule but misapplied it by shifting the burden of proving valid email service. Fed. R. Civ. P. 5 permits service by electronic means only where the recipient has consented in writing, and the Advisory Committee Note makes clear that such consent must be express and cannot be implied from conduct. Plaintiff does not dispute that a party opposing a motion to compel generally bears the burden to support discovery objections. But the threshold issue here is different: RMACO first had to establish valid service under Fed. R. Civ. P. 5 before the discovery obligations could be enforced.

2

## BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

## STATEMENT OF FACTS[2]

On April 10, 2026, this Court issued an Order Granting RMACO Defendants' Motion to Compel because of the curated record RMACO Defendants constructed. The central defect in the motion to compel was not simply that RMACO Defendants disagreed with Plaintiff; it was that they presented a curated chronology that omitted facts highly material to the Court's evaluation of prejudice, good faith, and the propriety of compelling further discovery. ECF Nos. 63-2 and 63-3 materially complicate that analysis. Despite possessing the complete record, RMACO Defendants withheld:

- The six additional emails from the very same thread as the one they selected to present in support of their claims (59-3, PageID 667). [3]

- They also withheld the email they referenced in their initial response on March 5 (ECF No. 63-2, PageID 774), which was transmitted to Plaintiff on  February 9, with a purported settlement offer of $3,000 ("settlement offer") and referenced, among other things, Plaintiff's upcoming depositions that had not even been scheduled. (ECF No. 63-3, PageID.794).

---

[2] See attached for a line-by-line chronology of the relevant emails.
[3] The entire email thread has since been docketed at ECF No. 63-2.

- Relatedly, they withheld emails from the same sequence as their settlement offer, including the one sent 14 minutes earlier by the Judicial Defendants requesting that Plaintiff's deposition be scheduled. This was prompted by Plaintiff's email seeking concurrence to modify the pleadings cutoff to February 13[4] (ECF No. 63-3, PageID.788-812) on February 6, which was one day after RMACO Defendants emailed their discovery requests to Plaintiff on February 5, 2026 (59-2, PageID 635).

- RMACO Defendants also withheld their March 18 concurrence email, which they reference in the motion but do not attach as an exhibit, despite presenting their March 12 email seeking concurrence.

- Furthermore, emails sent by the Judicial Defendants during the same timeframe, with  RMACO Defendants copied, were withheld, depriving the Court of even more context as to claims of being ignored by Plaintiff, which both RMACO and the Judicial Defendants[5] make in their respective motions to compel discovery.

While this motion for reconsideration responds to the Court's Order granting RMACO Defendants' motion to compel, the Judicial Defendants will be

---

[4] Amendment of pleadings cutoff date was January 16. (ECF No. 52, PageID.554).
[5] The Judicial Defendant's motion to compel is docketed as ECF No. 62. A hearing   on the Judicial Defendants' motion to compel is scheduled for May 21, 2026, before this Court.

4

referenced herein because their conduct since Plaintiff began representing

herself can't be divorced from RMACO's. Furthermore, both motions:

- withheld evidence in their possession that was not only material to an

  analysis granting relief, but also deprived the Court of an independent

  evaluation as to the truthfulness of the claims, the documented

  contradictions, insight regarding motivations, and critical context. Most

  notably, they both attached a single email as an exhibit to support their

  motion, but omitted several other emails in the same thread. In fact, the

  Judicial Defendants omitted the same record that RMACO Defendants did,

  with the exception of one email.

- allege the same urgency due to Plaintiff's scheduled deposition on April 27;

- include the same framing, characterizations, and allegations of Plaintiff;

- concealed their coordinated conduct that led Plaintiff to seek concurrence to

  be deposed in the Eastern District of Michigan, and concealed the lack of

  any discussion, negotiation, request for Plaintiff to pay for a neutral location,

  and/or good-faith conferral that necessitated the need to file a motion for a

  protective order.

The primary distinction lies in the timing of the respective motions; the

timing of both motions provides insight that can't be discounted for several

reasons. The Judicial Defendants' purported necessity only after the Court's

5

Order was entered on Friday, April 10, is more revealing than the fact that they filed a non-emergency motion on Monday, April 13, and that Plaintiff's deposition was scheduled for April 27.

The Judicial Defendants elected not to request a status conference, thereby foregoing the opportunity for immediate judicial intervention on short notice, and likewise chose not to file an emergency motion to compel discovery following their alleged good-faith conferral before the Court entered its April 10 order. They again elected to forgo both a status conference and any emergency motion practice after the Court's order was entered. That decision is inconsistent with the urgency, accusations, demands, and rhetoric directed at Plaintiff throughout their motion.

Their decision to forgo avenues that would have provided immediate judicial intervention is particularly revealing for several reasons:

- A request for a status conference could have been made ex parte because it involved scheduling matters.

- If there was a time when the Court may have been more inclined to accept the Judicial Defendants' allegations against Plaintiff and schedule an emergency status conference, it would have been immediately following the entry of the Court's April 10 order, which is when the Judicial Defendants decided there was an urgent need to file a motion to compel.

6

This raises the obvious question: why would the Judicial Defendants forgo requesting a status conference on short notice immediately after their claimed good-faith conferral effort? Such a conference would have left Plaintiff with little time to even compile the requests for production before appearing before the Court. It also would have allowed the Court to immediately inquire into the allegedly missing discovery responses and determine whether Plaintiff could promptly resend them.

The decision to forgo a status conference or emergency motion practice is even more revealing when viewed alongside the contradiction inherent in filing the motion on April 13, thereby rendering Plaintiff's response deadline April 27, while simultaneously demanding relief "no later than 4/17/26." (ECF No. 62, PageID.698). The Judicial Defendants' deliberate decisions created a procedural impossibility that bears on the necessity of their motion and why they did not concur to Plaintiff's concurrence request despite being aware of her position when they emailed her asking for a tracking number that they were aware of should have been aware when Plaintiff informed them she sent in the same manner they sent their request; first class mail which does not provide tracking information. (ECF No. 62-6, PageID. 748).

Both motions attempt to advance what the Judicial Defendant already did in ECF No. 49 but failed.

7

## LEGAL STANDARD

### *RECONSIDERATION*

Fed. R. Civ. P. 54(b) gives district courts broad discretion to revise interlocutory orders before final judgment. Unlike Fed. R. Civ. P. 59(e) and 60(b), Fed. R. Civ. P.54(b) is flexible because interlocutory orders "may be revised at any time" before final judgment. Fed. R. Civ. P. 54(b); The Sixth Circuit has recognized that "[a] district court may reconsider interlocutory orders and reopen any part of a case before entry of a final judgment," may grant relief "as justice requires," and may revisit an interlocutory order "for any reason it deems sufficient." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959–60 (6th Cir. 2004).

RMACO Defendants' selective exhibit presentation created the factual gap the Court later identified. The problem is not that the Court misread a complete record. The problem is that the Court was not given the record necessary to decide the issue fairly. RMACO Defendants selected portions of communications in their possession while omitting other emails from the same thread—emails necessary to understand the chronology, context, and meaning of the exchange.

Fed. R. Civ. P. 54(b) permits revision in precisely that circumstance. Reconsideration is appropriate where a prior ruling rests on a mistake of fact or law, where the Court did not have the benefit of a complete record, where material

8

facts were not presented, or where revision is necessary to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). That includes circumstances where the prior ruling rested on an incomplete factual presentation, failed to account for material facts necessary to a fair decision, or rested on a materially inaccurate factual premise or mistaken chronology. See *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *In re Saffady*, 524 F.3d 799, 802–03 (6th Cir. 2008); *Rodriguez*, 89 F. App'x at 959–60; *GenCorp*, 178 F.3d at 834.

### *SERVICE BY ELECTRONIC MEANS REQUIRES WRITTEN CONSENT, AND DISCOVERY DEADLINES RUN FROM SERVICE.*

Discovery papers may be served by electronic means only if the person served consented in writing. Fed. R. Civ. P. 5(b)(2)(E). As this Court has recognized, '[s]ervice by e-mail . . . is not permitted unless the person being served consented to such electronic service in writing.' *Freeman v. Napier*, 274 F.R.D. 610, 612 (E.D. Mich. 2011). The Eastern District's Electronic Filing Policies and Procedures likewise distinguish electronic service through the Court's electronic-filing system from service by other means. See E.D. Mich. Electronic Filing Policies and Procedures R. 9(a).

### *RMACO DEFENDANTS CREATED AND PRESERVED THE URGENCY THEY LATER CLAIMED AS PREJUDICE.*

9

Prejudice must be real, litigation-significant, and causally attributable to the opposing party. It is not established by ordinary litigation burdens, nor by circumstances the movant helped create or strategically preserved. See *Freeland v. Amigo*, 103 F.3d 1271, 1277-78 (6th Cir. 1997); *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 739 (6th Cir. 2008); *Borror Prop. Mgmt., LLC v. ORO Karric N., LLC*, 979 F.3d 491, 499-500 (6th Cir. 2020). Relatedly, the Sixth Circuit has rejected procedural manipulation designed to manufacture strategic advantage. See *Rowland v. S. Health Partners, Inc.*, 4 F.4th 422, 424 (6th Cir. 2021); *Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d 658, 661 (6th Cir. 2013).

### THE MOVANT BREACHED THE DUTY OF CANDOR BY PRESENTING A DISTORTED RECORD TO THE COURT

In Hazel-Atlas the Supreme Court rejected the notion that judicial correction must depend solely on the diligence of the opposing party, explaining that preservation of the integrity of the judicial process cannot always wait on litigants to uncover the problem. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). The point here is not that this motion requires a fraud-on-the-court finding. The narrower point is that a court need not leave an interlocutory order in place after the record shows that the movant possessed and omitted the communications that supplied the evidence the Court found absent.

Courts distinguish ordinary advocacy from materially misleading record presentation by looking to objective indicia: whether counsel possessed the complete

10

record, whether the omitted material came from the same communication sequence, whether the omitted context changed the meaning of the excerpt presented, whether the omission affected the Court's understanding, and whether the resulting misimpression was corrected. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 651 (6th Cir. 2005); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517-18 (6th Cir. 2002); *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

That distinction matters here because the omission did not merely affect Plaintiff's position; it affected the Court's ability to exercise judicial authority on an accurate record. A materially incomplete presentation of same-thread communications can manipulate the Court's analysis just as surely as an affirmative misstatement when the omitted portions supply the evidence the Court later identifies as absent. The integrity concern is therefore central: a movant cannot ask the Court to compel discovery, impose fee exposure, and adopt a delay narrative while withholding the communications that would allow the Court to test that narrative against the full record in the movant's possession.

***MOVANT BEARS THE BURDEN OF PRESENTING A COMPLETE RECORD, RULE OF COMPLETENESS, AFFIRMATIVE DUTY OF CANDOR, & COURT'S CASE MANAGEMENT RULES***

11

In addtiton to the section above, a movant is entitled to press its own legal theory, but not to obtain relief through a presentation that omits material parts of the written record on which the motion relies. That obligation exists independently of whether the nonmovant files an opposition identifying the omission. The absence of an opposition may explain why the Court did not see the full record; it does not transform a curated record into an accurate one.

Although summary-judgment authorities arise in a different procedural posture, their record-presentation principle is instructive. A summary-judgment movant must identify the record basis for the relief sought, and an unopposed motion is not granted merely because it is unopposed; the movant's showing still must support the relief requested. See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-05 (6th Cir. 1992). Fed. R. Civ. P. 56 does not govern ECF No. 59. The analogy is narrower: when a movant asks the Court to act on a written record, particularly where the requested relief includes deemed admissions, fees, evidentiary preclusion, and sanctions up to dismissal, the Court's ruling must rest on a fair and accurate presentation of the material record, not on omissions that make the movant's showing appear stronger than the complete record permits.

The Federal Rules reflect this baseline fairness principle. Fed. R. Civ. P.106 provides that when a party introduces all or part of a statement, the adverse party may require any other part, or any related statement, that in fairness ought to be considered at the same time. Fed. R. Evid. 106. The principle is especially apt where a party selects one email from a thread while omitting same-thread communications that change the meaning and legal effect of the excerpt.

Fed. R. Civ. P. 11(b)(3) likewise reflects the basic certification principle that factual contentions presented to the Court must have evidentiary support after reasonable inquiry. Fed. R. Civ. P. 11(b)(3). Although Fed. R. Civ. P.11 is not the discovery-sanctions mechanism for discovery requests and responses, ECF No. 59 was a motion filed with the Court. The relevant point is narrower: a party seeking judicial relief may not obtain it through factual contentions made materially incomplete by the omission of same-thread communications in counsel's possession.

That same baseline is reinforced by the Michigan Rules of Professional Conduct, which govern attorneys practicing before this Court. See E.D. Mich. LR 83.20(j). Mich. R. Prof'l Conduct 3.3(a)(1) prohibits a lawyer from knowingly making a false statement of material fact or law to a tribunal, and Mich. R. Prof'l Conduct 3.3(a)(4) prohibits a lawyer from offering evidence the lawyer knows to be false and requires reasonable remedial measures when material evidence offered by the lawyer later proves false. These rules are not cited to request disciplinary

13

relief in this motion. They confirm the narrower point relevant to Fed. R. Civ. P. 54(b): a movant may not seek relief through a materially incomplete factual presentation that leaves the Court with a misleading account of the record.

### *FED. R. CIV. P. 37 FEES CANNOT REST ON SELF-CREATED PREJUDICE OR SUBSTANTIAL JUSTIFICATION OMITTED FROM THE MOTION*

Fed. R. Civ. P. 37(a)(5) does not permit automatic expense-shifting. Even where a motion to compel is granted, the Court must not order payment if the movant filed before attempting in good faith to obtain discovery without court action, if the opposing party's nondisclosure, response, or objection was substantially justified, or if other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

### *THE COURT'S BURDEN ANALYSIS*

Under Fed. R. Civ. P. 5(b)(2)(E), non-ECF email service is valid only upon express written consent, and that consent cannot be implied from conduct. Accordingly, actual receipt, email exchanges, or failure to object did not relieve Defendants of their burden to identify the required written consent before seeking Fed. R. Civ. P. 37 relief.

The Court correctly recognized that service by email is permitted only if the recipient consented in writing. The Court erred, however, by placing the burden on Plaintiff to prove the absence of consent. Under Fed. R. Civ. P. 5, the party relying on email service must show that written consent existed; a history of email

14

communications does not substitute for written consent, and silence or lack of objection does not create it.

## **ARGUMENT**

### *RECONSIDERATION*

Since the April 10 Order is non-final, Fed. R. Civ. P. 54(b) grants this Court broad discretion and the inherent authority to revise it at any time prior to the entry of a final judgment.

### *THE ORDER'S RELIANCE ON RMACO DEFENDANT'S ON OMISSIONS*

The dispositive premise of ECF No. 61 was that the record did not show lack of agreement with the email service and did not explain Plaintiff's objection.

If the service was defective, Defendants could not fairly invoke deadlines as though they had proper service. See Fed. R. Civ. P. 5(b)(2)(E), Fed. R. Civ. P. 33(b)(2), Fed. R. Civ. P. 34(b)(2)(A), Fed. R. Civ. P. 36(a)(3). Defective service cannot be waived. Electronic service is only permitted with written consent.

Plaintiff expressly objected to improper electronic service on March 5, 2026. ECF No. 59-3, PageID.667. Yet their motion to compel still treated the February 5 email as if it alone started the response clock. ECF No. 59, PageID.621–28.

Therefore, their February 5 email did not constitute valid service under Rule 5(b)(2)(E), and the response deadlines in Fed. R. Civ. P. 33, 34, and 36 did not begin

on February 5. Nor was Plaintiff obligated to provide answers or objections by a deadline calculated from defective service.

That is not technical. It is the foundation of RMACO Defendants' motion. The Federal Rules do not permit a serving party to create a service defect, decline to cure it when identified, and then transform the resulting gap into alleged discovery misconduct.

Yet RMACO Defendants told the Court that they properly served discovery on February 5, 2026, without objection. ECF No. 59, PageID.621. Their own exhibit showed that the discovery was sent by email. ECF No. 59-2, PageID.635. Their proof of service likewise certified service by electronic mail. ECF No. 59-2, PageID.643. Ms. Stewart's response, which recognized the issue as one of consent and promising mail service.

The Order relied on those omissions.

### THE FULL RECORD CHANGES RMACO DEFENDANTS' PREJUICE ANALYSIS & DEMONSTRATES IT WAS SELF CREATED.

RMACO Defendants repeatedly invoked urgency and prejudice, emphasizing Plaintiff's April 27 deposition. ECF No. 59, PageID.622-28. But Defendants' own emails demonstrate sequencing and leverage rather than genuine urgency. The most revealing part of the chronology is what RMACO Defendants repeatedly chose not to do and the tactical timing of the deposition notice.

Mr. Romer stated on March 5 that he intended to file a motion to compel. ECF No. 63-2, PageID.774. RMACO Defendants did not file that day. Nor did they cure service, seek written consent to electronic service, or propose a response deadline running from proper service. Mr. Romer then stated on March 12 that he was prepared to file the necessary motions if Plaintiff did not respond by close of business on March 13. ECF No. 59-4, PageID.683. RMACO Defendants still did not file on March 13. They waited until after the March 17 status conference and filed ECF No. 59 on March 24, only days before Plaintiff's March 27 deadline to file the protective-order motion she had already previewed to the Court. ECF No. 59, PageID.620; ECF No. 61, PageID.688 n.2.

That chronology is incompatible with the urgency RMACO Defendants claimed. They asked the Court to treat their own preserved timeline as Plaintiff-caused prejudice even though they did not cure service when the issue was identified and did not pursue immediate relief when they threatened it.

On the complete record, the claimed prejudice was created and preserved through litigation choices. RMACO Defendants did not merely move to compel after a discovery dispute arose. They constructed a delay narrative by stripping away the emails showing Plaintiff's objection, their refusal to cure, Mr. Romer's sanctions threat, and the choices that generated the claimed urgency. Their own emails show sequencing and leverage, not a genuine need for immediate relief.

17

That is why the service defect cannot be isolated from the broader motion strategy. RMACO Defendants requested relief did not merely seek information; it sought compulsion, deemed admissions, fees, evidentiary consequences, and sanctions up to dismissal on a record that omitted why the asserted default existed.

## *SANCTIONS REQUEST WAS PRETEXTUAL*

RMACO Defendants' RFA-related sanctions and sanction-like relief was repackaged after Mr. Romer's March 5 sanctions threat.

Mr. Romer threatened sanctions before Plaintiff served her March 6 secondary objections to RMACO Defendants' RFAs. On March 5, after Plaintiff objected to email service and advised that she intended to request a status conference, Mr. Romer stated that he intended to file a motion to compel, warned that "I will also request sanctions from the court for your inclusion of my prior settlement offer in your filing." ECF No. 63-2, PageID.774. Yet ECF No. 59 did not seek sanctions based on that and if Mr. Romer believed it was a real settlement offer that he could defend he would have sought sanctions on that basis. But instead, he concealed it from the Court. Further, Plaintiff emailed secondary objections to RMACO Defendants' RFAs the next day. ECF No. 63-2, PageID.775. Thus, the threat of sanctions did not arise from those secondary objections. It preceded them.

18

ECF No. 59 then recast the issue as an RFA-default problem and sought a cascade of adverse relief. The chronology permits a straightforward inference. Mr. Romer first threatened sanctions because Plaintiff intended to place his settlement email before the Court. ECF No. 63-2, PageID.774. RMACO Defendants later filed ECF No. 59 without disclosing that threat, without seeking sanctions on that stated basis, and without attaching the same-thread communications showing Plaintiff's service objection, the anticipated status-conference filing, and Mr. Romer's contemporaneous reaction to it. Instead, they used Plaintiff's later March 6 secondary RFA objections as part of a broader discovery-default narrative seeking deemed admissions, Fed. R. Civ. P. 37(c)(2) fee-shifting, evidentiary preclusion, costs and fees, and sanctions up to dismissal. ECF No. 59, PageID.620, PageID.626-628.

The timing of the filing reinforces the same inference. RMACO Defendants waited and filed later after the March 17 status conference, after realizing that the Court[6] was not aware of the contents of Plaintiff's summary. RMACO Defendants March 18 email with a draft of the motion and exhibits were omitted (See attached) however, they presented their March 12 email without a draft. (ECF No. 59-4, PageID.683).

---

[6] Plaintiff is not faulting the Court she was unaware that the Court would not review anything even informally if it was not filed via CM/ECF until after the order was entered.

19

Further, they were aware Plaintiff should have be returning from her religious pilgrimage on March 23, and only days before Plaintiff was directed to file her protective-order motion on March 27. By filing first, RMACO Defendants positioned themselves to seek sanctions before Plaintiff could file the motion she had already previewed in summary form to the Court, including requests for an improper-purpose ruling and sanctions. That sequence allowed RMACO Defendants to cast Plaintiff's later requests as reactive rather than prophylactic.

### *PLAINTIFF'S NON-RESPONSE DID NOT RELIEVE RMACO DEFENDANTS OF THEIR INDEPENDENT DUTY NOT TO MISLEAD THE COURT BY OMISSION.*

Plaintiff's failure to respond to ECF No. 59 is not the dispositive issue. It may explain why the Court did not have the omitted thread before it when it ruled. But it does not make RMACO Defendants' curated presentation accurate, complete, or fair.

RMACO Defendants were the parties seeking judicial relief. They chose the exhibits. They selected the March 6 email from the thread. They omitted the earlier same-thread communications that explained Plaintiff's service objection, showed their understanding of it, reflected Ms. Stewart's statement that discovery would be resent by mail, and showed Mr. Romer's response before ECF No. 59 was filed. Plaintiff's non-response did not authorize RMACO Defendants to obtain relief through a record that omitted material communications in their possession.

20

The duty of candor is owed to the tribunal, not merely to an opposing party. It does not depend on whether the nonmovant identifies the omission before the Court rules. Rule 11(b)(3) likewise certifies that factual contentions presented to the Court have evidentiary support when made and when later advocated. Fed. R. Civ. P. 11(b)(3). The institutional point is straightforward: the integrity of the judicial process cannot depend on whether an opposing party catches a materially misleading omission in time. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

Here, the omission created the precise evidentiary gap on which the Court relied. The Court stated that no record material explained Plaintiff's improper-service objection and that Plaintiff had provided no evidence showing lack of agreement to email service. ECF No. 61, PageID.691 n.4; ECF No. 61, PageID.692. But the omitted March 5 thread did both. It stated the objection, and identified the lack of consent to email service. ECF No. 63-2, PageID.773-774.

That is why reconsideration does not turn on excusing Plaintiff's non-response. It turns on whether an interlocutory order should remain in place after the record shows that the movant possessed and omitted the communications that supplied the evidence the Court found absent. The answer should be no. RMACO Defendants could advocate their position; they could not make their position

21

appear inevitable by omitting the same-thread material that defeated the premise of their motion.

### *RMACO DEFENDANTS' NON-RESPONSIVENESS NARRATIVE OMITS THAT THEY IGNORED PLAINTIFF'S PROTECTIVE-ORDER CONCURRENCE REQUEST AND HELPED CREATE THE BURDEN HE ATTRIBUTED TO PLAINTIFF.*

Plaintiff did not have to respond to defective service, and RMACO Defendants' motion collapses if the complete record is considered. Conferral is therefore not required. But the omitted shows that while RMACO Defendants portrayed Plaintiff as ignoring conferral request, Mr. Romer himself ignored Plaintiff's concurrence request to be deposed at the Eastern District of Michigan and then filed a motion that omitted the record explaining why protective-order relief had become necessary.

The same point applies to initial disclosures. Plaintiff's March 5 email did not raise only service; it also requested compliance with initial-disclosure obligations. ECF No. 63-2, PageID.773. Neither RMACO Defendants nor Mr. Romer substantively addressed that request before filing ECF No. 59, even though the sufficiency of the initial disclosures was part of the same discovery sequence they later portrayed as Plaintiff-caused unresponsiveness.

22

*EVEN ASSUMING PROPER SERVICE, RMACO DEFENDANTS' RFA ARGUMENT DID NOT JUSTIFY THE RELIEF SOUGHT*

Assuming arguendo that Defendants' defective service is ignored, as their motion does, their attempt to treat Plaintiff's secondary objections to their requests for admission as establishing a broad obligation to respond to their other discovery requests is unsupported as a matter of law.

Even setting aside the issue of defective service, Defendants fail to establish that Plaintiff's responses to their requests for admission were legally insufficient. Defendants' motion lacks the specificity necessary to justify the relief it seeks as to those requests. The motion asserts, in conclusory form, that Plaintiff failed to properly admit or deny Request No. 2 and interposed "invalid objections" to Requests No. 1 and 3–5 but does not meaningfully explain why those answers and objections are deficient under Rule 36. That lack of specificity is significant because Rule 36 does not convert every disagreement with the form of an answer into automatic admission. A responding party must answer or object, and if the matter is not admitted, the answer must fairly respond to the substance of the request. Fed. R. Civ. P. 36(a)(4)–(5). Defendants' motion seeks to leap from "we dislike these responses because they are not the answers we need" to "the responses are insufficient as a matter of law," without identifying any deficiency required under applicable governing law to justify the relief they seek. *Instead,* RMACO sought blanket preclusion of "any" responsive information or documents,

23

ECF No. 59, PageID.627, without the rule-specific showing required for exclusion under Fed. R. Civ. P. 37(c)(1) or severe sanctions under Sixth Circuit law. See *Howe v. City of Akron, 801 F.3d 718 (6th Cir. 2015), Harmon v. CSX Transp., Inc., 110 F.3d 364 (6th Cir. 1997), Schafer v. City of Defiance Police Dep't, 529 F.3d 731 (6th Cir. 2008).*

**Defendants Seek to Recast a Merits Dispute as a Procedural Defect**

Defendants' request to have MOU-related matters deemed admitted is not routine use of requests for admission. Rather, those requests represent an effort to recast a merits dispute as a response-defect issue, which could in turn support dismissal. Defendants' motion therefore seeks to lock in a limited version of the MOU narrative through deemed admissions before those additional facts are pleaded and considered.

If Plaintiff's proposed amendment is granted, the fuller circumstances surrounding the revised MOU would further weaken Defendants' MOU-based defense. For this reason, Defendants seek to regard Plaintiff's March 6 responses as equivalent to a failure to respond. If Defendants can obtain admissions now, they can attempt to sidestep both the Court's existing analysis as to RMACO and Plaintiff's amendment by procedural shortcut, rather than meeting the fuller factual record on the merits.

24

While this is probably not the time to be informing the Court of this, but she will: in light of the foregoing her secondary objections were not supposed to be real answers but informative to RMACO Defendants. [7]

### BOTH DEFENDANTS' FAILURE TO CORRECT THE

The significance of the omission is compounded by the failure to correct the record after ECF No. 61 was issued. The omitted record created the exact evidentiary gap on which ECF No. 61 relied, and the resulting order remained in place notwithstanding the contrary chronology. The failure to correct also reinforces why the Court should treat the omission as more than an ordinary evidentiary gap.

Mr. Romer emailed Plaintiff on April 18 to depose Plaintiff twice instead once again of supplying the Court will the record that was omitted. (See attached) and Ms. Stewart filed a non-emergency motion to compel on April 13 and sought relief by April 18, a procedural impossibility.

### THE COURT'S BURDEN ANALYSIS

Respectfully, the Court placed the initial burden on the wrong party. Because Fed. R. Civ. P. 5(b)(2)(E), permits email service only with written consent, RMACO had the burden to produce that consent or otherwise establish that email service was authorized. Plaintiff's failure to affirmatively disprove consent does not cure the absence of proof of consent.

---

[7] See attached with full responses to their RFA's that support this section.

Plaintiff was not required to prove a negative before Defendants first established the predicate for valid email service. Under Fed. R. Civ. P. 5(b)(2)(E), service by electronic means is permitted only if the person served consented in writing. The Advisory Committee Note further states that such consent must be express and cannot be implied from conduct Thus, prior email communications, actual receipt, or the absence of an immediate objection could not substitute for the written consent required by the Rule. Because Defendants relied on non-ECF email service, they bore the threshold burden to identify the writing authorizing that method before discovery deadlines and Fed. R. Civ. P. 37 consequences could be enforced.

## CONCLUSION & RELEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion, vacate the April 10 Order Granting Motion to Compel and its accompanying show cause order.

Date: 5/14/2026                    By: _Sundus K. Jaber_____
                                   Sundus K. Jaber
                                   Plaintiff, Pro Se

26